SOCIEDAD DE GANANCIALES de MODESTO MALDONADO ET AL., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., demandados y recurridos.

*Número:* RE-89-632          *Resuelto:* 20 de febrero de 1992

*Rafael Fuentes Fernández* y *Rafael S. Fuentes Rivera*, abogados de los recurrentes; *Richard Schell Asad, Luis R. Mena Ramos, Reina Colón de Rodríguez, Subprocuradora General,* y *Laura Ydrach Vivoni, Procuradora General Auxiliar,* abogados de los recurridos.

## SENTENCIA

## I

La Autoridad de Edificios Públicos (Autoridad) contrató a la Puerto Nuevo Security Guard, Inc. para que prestara sus servicios de seguridad a diversas facilidades. Como parte de estos servicios, se encontraba el prestar vigilancia a varios planteles escolares asignados al Departamento de Instrucción Pública.

El 17 de marzo de 1987 Modesto Maldonado De Jesús, mientras ejercía sus funciones como empleado de la Puerto Nuevo Security Guard, Inc. en la Escuela Intermedia Josefina Ferrero de Fajardo, sufrió un accidente. Por ello, el 23 de junio de 1987, junto a su esposa y a la sociedad legal de

gananciales que formaban, presentó una demanda por los daños y perjuicios sufridos contra el Estado Libre Asociado de Puerto Rico y la Autoridad. Oportunamente, el Estado y la Autoridad solicitaron la desestimación bajo la alegación de que ambos eran patronos estatutarios de Maldonado De Jesús y que, conforme los Arts. 19 y 20 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. secs. 20 y 21, y a tenor con lo resuelto en *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861 (1977), gozaban de inmunidad patronal.

El 27 de octubre de 1989 el Tribunal Superior, Sala de Humacao (Hon. Luis Mojica Sandoz, Juez), desestimó. Intimó que el Estado no podía ser considerado como un extraño ajeno a la Autoridad toda vez que ésta ejercía funciones públicas esenciales para el Estado. En consecuencia, concluyó que la inmunidad patronal de la Autoridad, como patrono estatutario de Maldonado De Jesús, le era aplicable al Estado según *F.S.E. v. E.L.A.*, 111 D.P.R. 402 (1981).

Inconforme, Maldonado De Jesús recurrió a este Tribunal cuestionando la aplicación de la doctrina de *F.S.E. v. E.L.A.*, supra, a su caso.

## II

La Ley de Compensaciones por Accidentes del Trabajo establece que cuando el patrono ha cumplido con su obligación de asegurar a sus empleados, según lo establece el Art. 18 de dicha ley, 11 L.P.R.A. sec. 19, el único remedio que tiene un obrero accidentado durante el curso de su empleo es el provisto en el estatuto. *B.C.R. Co., Inc. v. Tribunal Superior*, 100 D.P.R. 754 (1972). La exclusividad del remedio establecido en el Art. 20, *supra*, crea una inmunidad legal en favor del patrono asegurado. *Admor. F.S.E. v. Flores Hnos. Cement Prods.*, 107 D.P.R. 789, 792 (1978).

En *Lugo Sánchez v. A.F.F.*, supra, interpretamos el alcance de la inmunidad patronal que se ofrece al patrono

estatutario. El término "patrono estatutario" se aplica a aquellos dueños de obras y principales a quienes ·la ley impone la obligación de asegurar a sus empleados y a aquellos de sus contratistas o subcontratistas de los cuales se sirva para la ejecución de obras y servicios. Su propósito es brindar una compensación segura a dichos empleados sin importar que el seguro lo pague el contratista, subcontratista o, en la alternativa, el dueño de la obra o principal.· El pago por éstos del seguro inmuniza a todos los patronos involucrados en esta cadena contractual contra acciones de daños por los empleados o por el mismo Fondo del Seguro del Estado (Fondo). *Vda. de Costas v. P.R. Olefins*, 107 D.P.R. 782, 785 (1978); *Lugo Sánchez v. A.F.F.*, supra; *Colón Santiago v. Comisión Industrial*, 97 D.P.R. 208 (1969).

La determinación de si un demandado es o no patrono estatutario depende de las relaciones contractuales entre dicho demandado y el patrono directo de los obreros. *Vda. de Costas v. P.R. Olefins*, supra, pág. 785.

Por otro lado, hemos reconocido el carácter de patrono asegurado al Estado cuando un empleado de una agencia sufre un accidente como resultado de los actos imputables a la negligencia de otra dependencia gubernamental. Ello se debe a que el concepto de "tercero" está inexorablemente atado a la existencia o no de la obligación de asegurar al empleado y a la determinación de si efectivamente está la persona cubierta por el Fondo, con referencia al obrero reclamante. *F.S.E. v. E.L.A.*, supra, pág. 405; *Lugo Sánchez v. E.L.A.*, supra, págs. 866–867. En vista de que el Estado, como entidad jurídica y fiscal, es la "persona" realmente responsable por las primas de seguro de todos los empleados de sus agencias e instrumentalidades, no puede ser considerado un tercero cuando el empleado sufre un daño imputable a los actos de otra dependencia gubernamental. Dicho razonamiento responde al hecho de que en términos fiscales toda agencia o instrumentalidad

gubernamental está adscrita al Gobierno del Estado Libre Asociado.

## III

No obstante el resultado a que llegamos en *F.S.E. v. E.L.A.*, supra, el presente caso presenta unos elementos fácticos especiales que requieren aclaración. Aquí, la Autoridad es un patrono estatutario. Como entidad corporativa pública que contrató con la Puerto Nuevo Security Guard, Inc., tiene la obligación de que todos los empleados (incluso los de su contratista) estén asegurados. Art. 19 de la Ley de Compensaciones por Accidentes del Trabajo, *supra.*

La Autoridad es una entidad corporativa y política constituida "como una *instrumentalidad del Estado Libre Asociado de Puerto Rico* ejerciendo *funciones públicas y esenciales* del gobierno y la ejecución ... de los poderes confer[ídoles] ... se considerará y entenderá como una *función esencial del Gobierno...*". (Énfasis suplido.) Art. 1 de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. sec. 902. Los servicios que presta son de carácter público y de primera necesidad para el funcionamiento adecuado de las ramas del Gobierno. En esencia, construye, compra, arrienda, administra y mantiene gran parte de las estructuras y edificaciones que albergan la maquinaria administrativa, legislativa y judicial del Estado. Conforme a su carácter de entidad pública, la administración de su personal debe regirse por normas análogas a las establecidas por las leyes de personal de Puerto Rico. Art. 10 de la Ley Núm. 56 (22 L.P.R.A. sec. 911). Además, toda vez que es una instrumentalidad del Gobierno, las finanzas de la Autoridad están sujetas a la fiscalización del Contralor de Puerto Rico. Art. III, Sec. 22 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1.

Ciertamente, no nos encontramos ante una corporación ajena a los deberes, las responsabilidades y las obligacio-

nes del Estado. Su estructura, administración, funcionamiento y propósito nos presentan una figura de instrumentalidad pública organizada por el Estado para unos fines públicos específicos.(¹) Véase *Pueblo v. Hernández Torres y Barreda*, 125 D.P.R. 560 (1990).

## IV

Ante la relación corporativa-gubernamental presente, conforme a la Ley de Compensaciones por Accidentes del Trabajo, estamos obligados a tratar a la Autoridad como una instrumentalidad pública. Por lo tanto, resulta de entera aplicación los fundamentos esbozados en *F.S.E. v. E.L.A.*, supra. La Autoridad, como principal del patrono de Modesto Maldonado De Jesús, goza de la inmunidad patronal que los Arts. 19 y 20 de esta ley, *supra*, conceden. Toda vez que el Estado se considera el patrono responsable de pagar, en términos fiscales, las primas de seguro que tocan a sus agencias e instrumentalidades, la Autoridad goza de la inmunidad reconocida al patrono estatutario. Le asistía la razón a los recurridos. Fue correcta la determinación del ilustrado foro de instancia.

Por los fundamentos expuestos, *se confirma la sentencia recurrida.*

Lo pronunció y manda el Tribunal y certifica el señor Secretario General. La Juez Asociada Señora Naveira de

---

(¹) Similarmente, aun cuando la Autoridad de Edificios Públicos es una entidad corporativa con personalidad independiente del Estado Libre Asociado, con capacidad para demandar y ser demandada, facultad para hacer contratos y con completo dominio y supervisión sobre todas y cada una de sus propiedades y actividades, la Legislatura le concedió una serie de poderes que legítimamente pertenecen al Estado. Específicamente, le facultó a "adquirir cualquier clase de bienes y derechos sobre los mismos en cualquier forma legal ... bien sea por convenio o mediante el ejercicio del *poder de expropiación forzosa*", y declaró los mismos "utilidad pública". (Énfasis suplido.) Art. 15(6) de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. sec. 906.

Rodón emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Hernández Denton.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Asociado Señor Hernández Denton.

El codemandante recurrente Modesto Maldonado de Jesús era empleado de la Puerto Nuevo Security Guard, Inc. (en adelante Puerto Nuevo Security), entidad dedicada a la prestación de servicios de seguridad. Dicha entidad fue contratada por la Autoridad de Edificios Públicos (en adelante Autoridad) para la prestación de sus servicios en diversas facilidades, entre las que se encontraba el plantel de la Escuela Intermedia Josefina Ferrero ubicada en el Municipio de Fajardo.

Mientras prestaba servicios de vigilancia en el mencionado plantel, el señor Maldonado resultó lesionado debido a que el portón de acceso y salida de la escuela se desprendió y lo impactó en la pierna izquierda. Al momento de ocurrir el accidente, Puerto Nuevo Security era un patrono asegurado a tenor con lo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*

Oportunamente, el señor Maldonado y su esposa, así como la sociedad legal de gananciales compuesta por ambos y sus hijos mayores y menores de edad (en adelante los recurrentes), presentaron demanda por daños y perjuicios contra el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) y su compañía aseguradora, cuyo nombre desconocían en ese momento. Luego de varios trámites procesales, los recurrentes enmendaron su demanda para

incluir como partes demandadas a la Autoridad, así como a la Corporación Insular de Seguros (en adelante la Corporación), compañía aseguradora del E.L.A. y de la Autoridad. Posteriormente, el E.L.A. presentó moción de desestimación en la que alegó que, al momento de ocurrir los hechos, era patrono estatutario del codemandante Maldonado, por lo que gozaba de inmunidad patronal conforme a lo establecido en los Arts. 19 y 20 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 20 y 21, y a lo resuelto en el caso *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861 (1977). La Corporación y la Autoridad presentaron conjuntamente una moción de sentencia sumaria(1) en la que esbozaron un argumento similar al del E.L.A.: la Autoridad, que era patrono estatutario; la Corporación, que estaba cobijada por la inmunidad de su asegurada.

El tribunal de instancia acogió estos planteamientos y dictó sentencia mediante la cual declaró ha lugar las mociones de desestimación y sentencia sumaria presentadas. Concluyó que la Autoridad, por ser patrono estatutario, goza de inmunidad patronal. A tenor con lo resuelto en *F.S.E. v. E.L.A.*, 111 D.P.R. 402 (1981), extendió dicha inmunidad al E.L.A. basado en que al Estado no se le puede considerar "un extraño ajeno a la Autoridad, ya que ésta (la Autoridad) ejerce funciones públicas esenciales al E.L.A. ...". En consecuencia, desestimó la demanda.

Los recurrentes nos solicitan la revisión de la sentencia dictada por el tribunal *a quo*. Señalaron, en síntesis, la comisión de dos (2) errores: que instancia erró al aplicar a los hechos del caso de autos lo resuelto en *F.S.E. v. E.L.A.*, supra; que, al así hacerlo, erró al determinar que el E.L.A. es patrono estatutario del codemandante Maldonado.

Luego de expedir el auto de revisión solicitado, la mayo-

---

(1) A pesar de que fue intitulada como "moción de sentencia sumaria", debido a que no incluyeron declaraciones juradas con su presentación, para todos los efectos puede considerarse como una "moción de desestimación".

ría de este Tribunal confirmó la sentencia recurrida. Exponen como fundamento que, debido a que la Autoridad —quien es patrono estatutario del codemandante Maldonado y, como tal, goza de inmunidad patronal— es una "instrumentalidad pública", el E.L.A. es considerado como "el patrono responsable de pagar, en términos fiscales, las primas de seguro" (Sentencia, pág. 965) de dicha instrumentalidad y, por lo tanto, goza de la inmunidad reconocida a ésta como patrono estatutario. Disentimos.

## II

Antes de profundizar en nuestro disenso, procede aclarar que estamos de acuerdo con la mayoría en cuanto a que la Autoridad es patrono estatutario del codemandante Maldonado.

En torno a la figura del patrono estatutario, hemos señalado que:

> Nuestra jurisprudencia únicamente ha reconocido la figura del "patrono estatutario" dentro del contexto de un contrato o subcontrato de obra o de servicios, y sólo para aquellos dueños de obra, principales contratistas o subcontratistas que tuvieran —con relación al trabajador lesionado— la obligación legal común de asegurarlo con el Fondo del Seguro del Estado. *Santiago Hodge v. Parke Davis Co.*, 126 D.P.R. 1, 11 (1990).

La Autoridad contrató con el patrono del señor Maldonado, Puerto Nuevo Security, para la prestación de servicios de seguridad. Como parte de dicho contrato, la Autoridad le exigió a Puerto Nuevo Security que asegurara a sus empleados con los seguros de compensación por accidentes requeridos por ley. Puerto Nuevo Security cumplió y aseguró a sus empleados, por lo que se convirtió en patrono asegurado. Reiteradamente hemos resuelto que, en situaciones como ésta, "el principal contratante o dueño de la obra no es un 'tercero' dentro del significado del Art. 31 de

la [Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32], sino un 'patrono estatutario', inmune a reclamaciones de obreros por estar expresamente exento de la obligación de asegurar en aquellos casos en donde el contratista independiente estuviera asegurado". *Santiago Hodge v. Parke Davis Co.*, supra, pág. 11. Véase, además, *Vda. de Costas v. P.R. Olefins*, 107 D.P.R. 782 (1978).

Sin embargo, la inmunidad que cobija a la Autoridad como patrono estatutario no puede extenderse hasta cubrir al E.L.A. y aislarlo de la reclamación de los recurrentes. La naturaleza de la Autoridad, según surge de la propia ley que la crea, hace de ésta una entidad distinta y distinguible del E.L.A. Veamos.

## III

La Autoridad fue creada en virtud de las disposiciones de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. secs. 901–907 y 908–917. Fue establecida como una entidad corporativa con personalidad jurídica propia; como "un cuerpo corporativo y político con sucesión corporativa", con "completo dominio y supervisión sobre todas y cada una de sus propiedades y actividades" y con capacidad "para demandar y ser demandada ...". 22 L.P.R.A. secs. 902 y 906(3) y (4).

No obstante el hecho de que las corporaciones públicas[2] son parte integrante de la Rama Ejecutiva del E.L.A., éstas "se diferencian de otros organismos en esa rama de gobierno, ya que el uso de la ficción corporativa para llevar a cabo sus actividades gubernamentales tiene la finalidad de librarlas de ciertas restricciones que pesan

---

[2] "Los términos corporación pública e instrumentalidad gubernamental se utilizan indistintamente para denominar un organismo administrativo con autonomía y personalidad jurídica propia, separada o aparte del Estado Libre Asociado, y el cual tiene la flexibilidad necesaria para desempeñar sus actividades." Op. Sec. Just. Núm. 1983–29, pág. 171.

sobre los departamentos tradicionales del Gobierno, logrando cierta flexibilidad y adaptabilidad característica de las empresas comerciales privadas". Op. Sec. Just. Núm. 1984-9, pág. 59.

Al ser creada como ente corporativo con personalidad jurídica propia, la Autoridad tenía la finalidad de poder actuar con independencia del E.L.A. Esto se colige de la discusión habida en la Cámara de Representantes al momento de ser sometido para su aprobación el Proyecto del Senado 297 (en adelante P. del S. 297), proyecto de ley que dio paso a la creación de la Autoridad. Al presentarse el informe de la Comisión de Gobierno Estatal sobre el P. del S. 297, se dijo lo siguiente:

> ...es la intención de este proyecto crear un organismo con configuración propia, con facultades y deberes autónomos, tendiente a facilitar la más rápida y eficaz tramitación en la adquisición, arrendamiento, construcción y mejoras de facilidades de oficinas para el Estado Libre Asociado de Puerto Rico. 10 Diario de Sesiones, T. 4, pág. 1847 (1958).

La Comisión de Obras y Terrenos Públicos presentó otro informe en el cual expresó el propósito fundamental del P. del S. 297:

> *Este proyecto es con el propósito de estructurar un organismo gubernamental con suficiente poder y autonomía que facilite los trámites necesarios para el financiamiento* de la adquisición, arrendamiento, construcción y mejoras de facilidades de oficinas para el Estado Libre Asociado. *La Autoridad que se crea,* aunque muy parecida a la Compañía existente, creada por la Ley Núm. 117 aprobada el 1 de julio de 1953, *funcionaría independientemente* regida por cinco (5) miembros nombrados por el honorable Gobernador. *Actualmente la Compañía* [del Centro Gubernamental de Oficinas de Puerto Rico] *está adscrita al Departamento de Obras Públicas, sin suficiente independencia para facilitar la contratación de empréstitos bien sea mediante la emisión de bonos u otras formas que la nueva Autoridad crea conveniente.* (Énfasis suplido.) Diario de Sesiones, *supra,* pág. 1868.

Lo anterior es indicativo de que, como cuestión de hecho y de derecho, la Autoridad fue creada para funcionar como si fuera una empresa privada, con independencia del E.L.A. En cuanto a qué criterios deben considerarse al determinar si una entidad gubernamental opera como una empresa privada, hemos señalado, entre otros, los siguientes:

...si los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado .... *A.A.A. v. Unión Empleados A.A.A.*, 105 D.P.R. 437, 455 (1976). Véase, además, *Unión Empleados Carreteras v. J.R.T.*, 119 D.P.R. 116 (1987), opinión concurrente.

Al hacer esta enumeración, aclaramos que ninguno de estos criterios es determinante por sí solo, sino que es necesario "examinar en cada caso la conjunción de factores existentes para a su luz resolver si la [instrumentalidad] concernida funciona o no como un negocio privado ...". *A.A.A. v. Unión Empleados A.A.A.*, supra, pág. 456. "Es claro que la enumeración de factores hecha en el caso no es taxativa y que ninguno de estos criterios tendrá más peso o

valor que los demás." *Unión Empleados Carreteras v. J.R.T.*, supra, pág. 126.

Un examen de los poderes otorgados a la Autoridad por la ley que la creó, a la luz de los criterios antes mencionados, fortalece nuestra conclusión de que ésta, concebida como una corporación o instrumentalidad con autonomía y personalidad jurídica separada del E.L.A., opera como una empresa o negocio privado. Veamos.

Una vez aprobada la ley, para hacer viable el propósito trazado por los legisladores, a la Autoridad se le otorgó, entre otras cosas, el poder necesario "para tener completo dominio y supervisión sobre todas y cada una de sus propiedades y actividades incluyendo el poder de determinar el carácter y la necesidad de todos sus gastos, y el modo como los mismos deberán incurrirse, autorizarse y pagarse", 22 L.P.R.A. sec. 906(3); se le dio poder "para demandar y ser demandada, querellar y defenderse en todos los tribunales de justicia y organismos administrativos", 22 L.P.R.A. sec. 906(4); se le autorizó a emitir bonos, lo cual le concede la autonomía fiscal deseada y es cónsono con la idea de excluirla de la deuda pública, 22 L.P.R.A. sec. 907; para facilitarle la gestión de fondos y permitirle realizar sus fines corporativos, se le concedió exención contributiva sobre sus bienes, propiedades, bonos y las ventas devengadas por éstos, 22 L.P.R.A. sec. 909; se le excluyó de la aplicación de las disposiciones de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*), 22 L.P.R.A. sec. 911, y se le facultó para arrendar total o parcialmente sus propiedades y percibir rentas, 22 L.P.R.A. sec. 916.

Teniendo en mente lo antes expuesto, pasemos a analizar si a la luz de la situación particular del caso de autos el E.L.A. debe ser considerado como patrono estatutario o si, por el contrario, es un tercero responsable a tenor con lo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32.

# IV

'El sistema de compensaciones a obreros "fue implantado para eliminar el desamparo en que quedaban los obreros que sufrían accidentes en el trabajo, quienes para poder obtener compensación tenían que demostrar judicialmente la negligencia de su patrono". *Santiago Hodge v. Parke Davis Co.*, supra, pág. 9. Este sistema es financiado mediante el establecimiento de un seguro compulsorio a cuyo pago está obligado todo patrono que emplee uno o más obreros o empleados. 11 L.P.R.A. secs. 2, 18 y 19. A cambio del pago por parte del patrono de este seguro compulsorio, el legislador le concedió inmunidad contra cualquier reclamación que tuviera un empleado u obrero en su contra. Esto es, todo obrero o empleado que se lesione, inutilice o pierda la vida como consecuencia de un accidente que provenga de "cualquier acto o función inherente a su trabajo o empleo" y que ocurra "en el curso de éste", si su patrono está asegurado con arreglo a la Ley de Compensaciones por Accidentes del Trabajo, sólo tiene derecho a la compensación que ésta provee.[3] Carece de causa de acción contra su patrono por los daños sufridos. 11 L.P.R.A. secs. 2 y 21; *Admor. F.S.E. v. Flores Hnos. Cement Prods.*, 107 D.P.R. 789, 792 (1978). Como vimos anteriormente, esta inmunidad protege por igual al patrono estatutario.

---

[3] En caso de que le ocurra un accidente a un obrero o empleado de un patrono que no estuviese asegurado, el Administrador del Fondo del Seguro del Estado determinará la compensación y los gastos que proceda concederle al primero y cobrará al patrono dicha compensación y gastos. Además, el obrero o empleado perjudicado, así como sus beneficiarios, pueden proceder contra el patrono no asegurado como si la Ley de Compensaciones por Accidentes del Trabajo no existiera. Pueden presentar una petición para solicitar compensación ante la Comisión Industrial así como instar acción en daños y perjuicios ante los tribunales.

Estas acciones no son excluyentes entre sí. El obrero o empleado, o sus beneficiarios, pueden iniciar una, otra o ambas. El patrono no asegurado no puede beneficiarse de la inmunidad que provee la ley. Véase el Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 16.

Sin embargo, el sistema de compensaciones no está diseñado para extender la inmunidad a "terceros" o "extraños" responsables por los daños causados al obrero o empleado. 2A *Larson, Law of Workmen's Compensation* Cap. XIV (1988); *Santiago Hodge v. Parke Davis Co.*, supra; 11 L.P.R.A. sec. 32. "Extender la inmunidad ... [hasta cubrir a éstos] iría en detrimento del derecho del trabajador a reclamar daños que él no ha transigido ni renunciado en la histórica fórmula de seguro exclusivo incorporada en nuestra Ley de Compensaciones por Accidentes del Trabajo." *Ruiz Díaz v. Vargas Reyes*, 109 D.P.R. 761, 764–765 (1980). Una vez se determina que la lesión, muerte o enfermedad del obrero o empleado ocurrió en circunstancias que hacen responsables de las mismas a un tercero, "el obrero o empleado lesionado tiene elección de remedios. Puede reclamar al Fondo, o puede renunciar sus derechos en el Fondo y reclamar directamente al tercero responsable de sus lesiones, o puede hacer ambas siempre que no haya subrogación de parte del Administrador del Fondo y transcurran 90 días desde que la decisión administrativa sea final y ejecutoria". *López Rodríguez v. Delama*, 102 D.P.R. 254, 257–258 (1974).

Ahora bien, para que estas disposiciones entren en función, es necesario establecer quién es un "tercero". La tarea de definir esta figura ya fue acometida. En *López Rodríguez v. Delama*, supra, pág. 258, dijimos que "[e]n ausencia de expresión legislativa sobre el significado del vocablo 'terceras personas' usado en el Art. 31 de la Ley, [11 L.P.R.A. sec. 32,] debemos conferirle su significado usual asumiendo que incluye a toda persona aparte del empleado lesionado y su patrono asegurado". Posteriormente, en *Lugo Sánchez v. A.F.F.*, supra, págs. 866–867, añadimos que "[e]l tercero sujeto a demanda por daños y perjuicios a los fines del Art. 31 de la Ley es persona extraña, ajena y separada de la interacción jurídica que relaciona al patrono estatutario ... y al contratista ... con el Fondo del

Seguro del Estado en la obligación legal común de asegurar sus obreros y empleados a tenor con lo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo". Finalmente, al tomar en consideración lo antes señalado, resolvimos que "el concepto de tercero está inexorablemente atado a: (1) la existencia o no de la obligación de asegurar; y (2) si efectivamente está la persona cubierta por el Fondo, con referencia al obrero reclamante". *F.S.E. v. E.L.A.*, supra, pág. 405.([4])

De lo antes dicho se desprende que no será considerada como "tercero" aquella persona que tenga la obligación de cubrir e indemnizar a su obrero o empleado mediante el pago de las primas requeridas, de forma tal que éste quede asegurado en el Fondo del Seguro del Estado.

En el caso de autos, el E.L.A. no tiene la obligación de pagar las primas para asegurar a los empleados u obreros de la Autoridad ni a los obreros o empleados de las personas que contraten o subcontraten con la Autoridad. La ley que la creó tenía el propósito específico de concederle suficiente autonomía fiscal con relación al Estado. Dicha ley no contiene disposición o lenguaje alguno que vincule u obligue al E.L.A. al pago de las primas del seguro que estipula la Ley de Compensaciones por Accidentes del Trabajo. Como indicamos anteriormente, el E.L.A. y la Autoridad son dos (2) personas jurídicas totalmente distintas e independientes.

No es necesario acudir a los postulados de la "doctrina de la doble capacidad"([5]) para sostener la conclusión a que

---

([4]) La discusión relativa a la figura del "tercero", al igual que a la del "patrono estatutario", ha surgido en el contexto de las relaciones entre contratistas y subcontratistas con el patrono principal o dueño de la obra.

([5]) En *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 406 (1981), discutimos la trayectoria y el alcance de la doctrina de la doble capacidad. Allí la describimos como "aquella bajo la cual 'un patrono normalmente inmune a una reclamación por daños y perjuicios en virtud del principio de remedio exclusivo puede ser responsable hacia su empleado si ostenta, además de su capacidad como patrono, una segunda capacidad dimanante de una obligación independiente a la impuesta como patrono' ". Allí rechazamos la

hemos llegado. La misma, además de ser rechazada en nuestra jurisdicción y en la mayoría de las jurisdicciones estatales en Estados Unidos, no es aplicable al caso de autos. Tampoco es necesario acudir a la "doctrina de la doble personalidad". Esta doctrina fue formulada con la intención de corregir las deficiencias de la "doctrina de la doble capacidad". La "doctrina de la doble personalidad" postula que un patrono puede convertirse en tercero, sujeto a responderle en daños y perjuicios a su empleado, únicamente si posee una segunda personalidad totalmente independiente y sin relación alguna con su rol como patrono, que mediante estándares establecidos la ley lo reconozca como una persona legal separada. *Larson*, supra, Sec. 72.80–72.81(b), págs. 14-229 a 14-236.

En el caso de autos, el E.L.A. no es patrono del codemandante Maldonado. Es un tercero extraño a la relación contractual y patronal establecida entre la Autoridad y Puerto Nuevo Security. Por lo tanto, no abandona una personalidad patronal para adquirir, por ficción legal, otra personalidad distinta. El E.L.A. simplemente es una persona jurídica diferente y separada de la Autoridad. Es específicamente dentro de este esquema que la Autoridad, corporación pública con personalidad propia, debe considerarse como patrono independiente y separado del E.L.A., según lo dispuesto en el Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2.[6]

Incidió el tribunal de instancia al aplicar a este caso lo resuelto en *F.S.E. v. E.L.A.*, supra.[7] El E.L.A. no es pa-

---

aplicación de esta doctrina a la situación discutida.

[6] En lo pertinente, dicho artículo establece lo siguiente:

"...El Gobierno del Estado Libre Asociado, y los diversos gobiernos municipales, juntas, comisiones, autoridades, instrumentalidades, corporaciones públicas y agencias del Estado Libre Asociado, se considerarán como patronos y como tales serán comprendidos dentro de las disposiciones de este Capítulo en cuanto a los obreros, empleados y funcionarios que utilicen." 11 L.P.R.A. sec. 2.

[7] El caso *F.S.E. v. E.L.A.*, supra, es distinguible del caso de autos. Allí se trataba de la reclamación de una empleada de una agencia del Estado Libre Asociado (E.L.A.) —Policía de Puerto Rico— por una caída sufrida en las facilidades de otra

trono estatutario del Sr. Modesto Maldonado De Jesús. Los errores señalados fueron cometidos.

A la luz de lo antes expuesto, revocaría la sentencia recurrida.

agencia del Gobierno —Departamento de Instrucción Pública— mientras se encontraba en funciones de su empleo. Tanto la Policía como el Departamento de Instrucción Pública son agencias totalmente dependientes del E.L.A. Ninguna posee personalidad jurídica propia ni generan sus propios ingresos. No se trata aquí de corporaciones o instrumentalidades públicas en el significado particular de esta terminología. Op. Sec. Just. Núm. 1983-29, pág. 171. En ese caso, al E.L.A. no se le podía considerar como un tercero extraño y ajeno a ambas agencias.