SAMUEL MORALES MORALES, ETC., demandantes y recurrentes, v. AUTORIDAD DE CARRETERAS Y OTROS, demandados y recurridos.

*Número:* RE-94-528          *Resuelto:* 31 de enero de 1996

*Luis R. Mellado González,* abogado de la parte recurrente; *Roberto Febry Martínez,* abogado de la parte recurrida.

4

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Presidente Señor Andréu García.

La mayoría del Tribunal, en la sentencia que emite en el caso de autos, señala que lo determinante en pleitos como el de marras es decidir si la entidad demandada es una corporación pública, en cuyo caso la demanda procede, o si se trata, en cambio, de una instrumentalidad gubernamental, en cuyo caso la demanda no procede. Cita en apoyo de

la referida norma los casos de *F.S.E. v. E.L.A.*, 111 D.P.R. 402 (1981), y *Soc. de Gananciales Maldonado v. E.L.A.*, 129 D.P.R. 961 (1992), en los cuales este Foro denegó las acciones por daños de los trabajadores afectados, por ser los demandados instrumentalidades del Gobierno en ambos casos: el Departamento de Instrucción Pública, en el primero, y la Autoridad de Edificios Públicos, en el otro.

Con arreglo a tales precedentes, me veo compelido a disentir de lo que resuelve la mayoría en el caso de autos ya que, en lo esencial, creo que no existe diferencia sustancial entre la Autoridad de Edificios Públicos y la Autoridad de Carreteras y Transportación de Puerto Rico (en adelante Autoridad de Carreteras), que es la demandada en el caso de autos.

## I

Si se comparan las funciones, los poderes y la organización de la Autoridad de Carreteras con las de la Autoridad de Edificios Públicos, se observará su esencial similaridad como entes del Estado.

En primer lugar, ambas son expresamente creadas por ley como "cuerpo corporativo" e "instrumentalidad" del Estado Libre Asociado para ejercer "funciones públicas y esenciales del Gobierno". Véanse: 9 L.P.R.A. sec. 2002 y 22 L.P.R.A. sec. 902.

En segundo lugar, ambas están regidas por una "Junta de Gobierno". Sin embargo, en este particular debe notarse que el nombramiento de los miembros de la Junta de Edificios Públicos le corresponde discrecionalmente al Gobernador de Puerto Rico, con el consejo y consentimiento del Senado. En cambio, en el caso de la Autoridad de Carreteras, la propia ley dispone que su Junta estará integrada en específico por los Secretarios de Obras Públicas, Hacienda y Agricultura, más el Presidente de la Junta de Planificación y un alcalde designado por el Gobernador. La Junta de

Carreteras, pues, tiene mayor carácter gubernamental que la de Edificios Públicos.

Tercero, los poderes esenciales de ambas entidades son idénticos. Ambas pueden: (a) demandar y ser demandadas; (b) adquirir cualquier clase de bienes; (c) controlar y ejercer pleno dominio sobre sus bienes; (d) tomar dinero a préstamo; (e) emitir bonos; (f) hacer contratos o cualquier otro acto o transacción necesaria o conveniente para llevar a cabo sus funciones; (g) adoptar, enmendar y derogar reglas y reglamentos, y (h) nombrar funcionarios, agentes y empleados. Ambas, además, *están facultadas para ejercer el poder de expropiación forzosa.* Véanse: 9 L.P.R.A. sec. 2004 y 22 L.P.R.A. sec. 906.

Cuarto, las funciones concretas de ambas entidades son eminentemente públicas y análogas. La Autoridad de Edificios Públicos existe para proveer facilidades físicas necesarias para prestar servicios gubernamentales, tales como escuelas, oficinas, cuarteles, almacenes, talleres y tribunales. La Autoridad de Carreteras tiene expresamente encomendada por ley la responsabilidad de "continuar la obra de gobierno de dar al pueblo las mejores carreteras y medios de transportación ... y facilidades de tránsito".

Quinto, los derechos y deberes del personal de ambas entidades se ordenan conforme a una misma norma básica. En ambos casos, las leyes que crean estas dos (2) entidades disponen idénticamente que la Autoridad, en consulta con el Director de la Oficina de Personal, establecerá un sistema de personal *análogo* al que rige para los empleados del Estado Libre Asociado, en tanto dicha autoridad lo estime compatible con sus mejores intereses. En otras palabras, ambas instrumentalidades tienen el mandato de seguir los principios de servicio civil que rigen el empleo gubernamental, pero con determinado grado de discreción para atender sus realidades particulares. Véanse: 9 L.P.R.A. sec. 2007 y 22 L.P.R.A. sec. 911.

Sexto, ambas entidades están obligadas a depositar sus fondos en depositarios reconocidos para los fondos del Estado Libre Asociado, aunque se les instruye igualmente a mantener dichos fondos en cuentas separadas a nombre de la Autoridad. Véanse: 9 L.P.R.A. sec. 2008 y 22 L.P.R.A. sec. 914.

Finalmente, debe quedar meridianamente claro que ambas entidades operan esencialmente a base de fondos públicos, *particularmente la Autoridad de Carreteras,* cuyo carácter gubernamental es el que está en cuestión en este caso. La Autoridad de Edificios Públicos, que conforme a *Soc. de Gananciales Maldonado v. E.L.A.,* supra, es parte integral del gobierno estadual, depende para sus gastos de operación esencialmente de las *rentas* que cobra a otros organismos gubernamentales por el alquiler de los edificios construidos por dicha autoridad. Por ello, aunque genera lo que parece ser "ingresos propios", a distinción de asignaciones específicas del Fondo General, se trata de fondos públicos *indirectos,* que se originan mayormente en el tesoro público. La Autoridad de Carreteras, por su lado, depende *directamente* para sus gastos operacionales de las aportaciones fiscales. Las asignaciones directas del Fondo General, los fondos federales, los arbitrios sobre la gasolina y otros fondos gubernamentales constituyen la fuente de la inmensa mayoría de su presupuesto. *Los cargos por peaje, que la mayoría del Tribunal considera "ingresos propios" de la Autoridad, son realmente sólo una porción pequeña de éste.* En 1990, por ejemplo, dichos cargos constituyeron sólo un *13.28%* del presupuesto de la Autoridad de Carreteras. En 1993 dichos cargos por peaje aumentaron a *19.72%* de los ingresos de la Autoridad de Carreteras, constituyendo aun así sólo una parte menor de éstos. Véase el Presupuesto del Gobierno de Puerto Rico de los años fiscales correspondientes. Más aún, debe notarse que los fondos que recibe la Autoridad de Carreteras por concepto de car-

gos por peaje no es dinero que esté libremente disponible a dicha autoridad para gastos operacionales. Dichos fondos existen esencialmente para pagar los intereses y el principal de los *bonos* que emite la Autoridad. Son parte integral de los esquemas de *financiamiento* de algunos de los proyectos desarrollados o promovidos por la Autoridad de Carreteras.

Para concluir, debe tomarse en cuenta también que en Puerto Rico, desde hace muchos años ya, las distinciones entre los departamentos de la Rama Ejecutiva y las entidades públicas como las dos autoridades aludidas, han estado evanesciéndose. Ello ha ocurrido, en parte, porque las leyes que establecen tales entidades incorporan rasgos *mixtos* en su ordenación. Ha ocurrido, además, por la innegable realidad política de que esas entidades están tan sujetas a los controles y a la dirección central de parte del Primer Ejecutivo, como los propios departamentos. Con mucha frecuencia, por ejemplo, los directores ejecutivos de dichas autoridades no pueden ser nombrados por las Juntas de Gobierno de éstas si no tienen el visto bueno de Fortaleza. Igualmente, sus políticas y planes de acción usualmente responden a esquemas formulados en las oficinas del Gobernador. Desprovistas de autonomía fiscal, y creadas para realizar funciones gubernamentales esenciales, tales entes públicos no han podido mantener la distancia de la Rama Ejecutiva que su supuesto *status* corporativo implicaría. Quizás por ello, en los estatutos que las crean se les identifica a la vez como "cuerpo corporativo" e "instrumentalidad del Estado Libre Asociado".

En resumen, pues, entre la Autoridad de Carreteras y la Autoridad de Edificios Públicos no existen diferencias sustanciales que permitan concluir que una es parte del Estado y la otra no. Ambas guardan fundamentalmente la misma relación con el Estado Libre Asociado. Si para la Autoridad de Edificios Públicos el Estado Libre Asociado

no es un tercero extraño, tampoco lo es para la Autoridad de Carreteras.[1]

---

[1] Este Tribunal tiene la responsabilidad de ser consistente en sus decisiones y resolver por igual controversias similares, aunque alguna de las decisiones no constituyan precedentes.