MARÍA TERESA RODRÍGUEZ TORRES, por sí y en representación de sus hijos menores de edad FRANCISCO PRADO RODRÍGUEZ y EVA PRADO RODRÍGUEZ, demandantes y recurrentes, *v.* AUTORIDAD DE EDIFICIOS PÚBLICOS y la CORPORACIÓN INSULAR DE SEGUROS, demandadas y recurridas.

*Número:* RE-93-88      *Resuelto:* 19 de julio de 1996

*Jorge M. Suro Ballester*, abogado de los recurrentes; *Francisco J. Torres*, de *Mena & Dorán*, abogado de las recurridas.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La demandante recurrente, María Torres Rodríguez, laboraba como economista en el Banco Gubernamental de Fomento, institución que tiene sus oficinas centrales en el complejo gubernamental de oficinas conocido como el "Centro Gubernamental de Minillas", complejo que es "propiedad" de la Autoridad de Edificios Públicos de Puerto Rico.

El 23 de diciembre de 1991, la señora Rodríguez sufrió un accidente o caída —alegadamente, al resbalar en un charco de aceite— en un área bajo techo que "conecta" el edificio norte de dicho Centro Gubernamental con el edificio donde están localizadas las oficinas del Banco Gubernamental de Fomento.

Como consecuencia de dicho accidente, la señora Rodríguez, por sí y en representación de sus hijos menores de edad, radicó una demanda, *sobre daños y perjuicios*, ante el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, contra la Autoridad de Edificios Públicos y la compañía aseguradora de ésta, la Corporación Insular de Seguros. La "parte demandada", luego de contestar la demanda, radicó una moción de sentencia sumaria en la cual alegó, en síntesis y en lo pertinente, que la Autoridad gozaba de "inmunidad patronal" por razón de que tanto ésta como el patrono directo de la demandante eran ambas instrumentalidades del Estado Libre Asociado de Puerto Rico.

Luego de que la parte demandante radicara la correspondiente oposición, el tribunal de instancia dictó sentencia acogiendo el planteamiento de la parte demandada sobre inmunidad patronal o "patrono estatutario". Inconforme, la parte demandante acudió ante este Tribunal imputándole al foro de instancia haber errado al

> ... concluir que la AEP es un patrono estatutario de una empleada del Banco Gubernamental de Fomento que sufrió un accidente en el curso de su empleo en un inmueble de la AEP, sin antes determinar la existencia de relación contractual alguna entre la AEP y el Banco Gubernamental de Fomento y sin tomar en consideración que el Banco Gubernamental de Fomento le paga al Fondo del Seguro del Estado las primas para asegurar a sus empleados con fondos que genera de su operación diaria y no de una asignación de fondos del gobierno central. Petición de revisión, pág. 5.

Expedimos el recurso radicado. Estando en posición de resolver el mismo, procedemos a así hacerlo.

# I

██ La figura del "patrono estatutario" tiene sus bases en las disposiciones de los Arts. 19 y 20 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 20 y 21. Conforme la misma, todo patrono que cumpla con la obligación legal que tiene de asegurar a sus empleados con el Fondo del Seguro del Estado tendrá "inmunidad" respecto a cualquier accidente que sufran dichos empleados en el curso de su empleo, únicamente pudiendo reclamar dichos empleados los beneficios que provee el Fondo. *Admor. F.S.E. v. Flores Hnos. Cement Prods.*, 107 D.P.R. 789, 792 (1978).

██ En *F.S.E. v. E.L.A.*, 111 D.P.R. 402 (1981), nos enfrentamos a una *situación parecida* a la que plantea el caso que hoy ocupa nuestra atención. En dicho caso, una empleada de la Policía de Puerto Rico, en funciones de su empleo como conferenciante de dicha agencia gubernamental, sufrió un accidente en una de las escaleras de una escuela del Departamento de Instrucción Pública.[1] El Fondo del Seguro del Estado se subrogó en los derechos de dicha empleada y demandó al Estado Libre Asociado de Puerto Rico, alegando negligencia de parte del Departamento de Instrucción. *Resolvimos* en dicho caso que la demanda radicada *no* resultaba procedente en derecho por cuanto, dados los hechos particulares del caso, el Estado *no* podía ser considerado como un "tercero" en vista del hecho que la inmunidad patronal del Estado se extiende a todas sus agencias e instrumentalidades.[2] A esos efectos expresamos que la "fuente del dinero para el pago de la prima [al Fondo del Seguro] es una sóla: el tesoro público".

---

[1] Hoy, Departamento de Educación.

[2] Este Tribunal ha definido el concepto "tercero" como aquella "persona extraña, ajena y separada de la interacción jurídica que relaciona al patrono estatutario" o toda "persona aparte del empleado lesionado y su patrono asegurado". *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861, 866 (1977). Véanse: *F.S.E. v. E.L.A.*, 111 D.P.R. 402 (1981); *López Rodríguez v. Delama*, 102 D.P.R. 254, 258 (1974).

La demandante recurrente, *sin embargo*, alega que el caso de autos es *distinguible* del caso antes reseñado *en vista del hecho de que* aquí no se trata de agencias gubernamentales, como lo son la Policía de Puerto Rico y el Departamento de Instrucción Pública, *y sí de corporaciones públicas*, como lo son el Banco Gubernamental de Fomento y la Autoridad de Edificios Públicos.[3]

---

[3] El Banco Gubernamental de Fomento (en adelante el Banco) fue creado en virtud de la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, 7 L.P.R.A. sec. 551 *et seq.* El Banco es una corporación que se creó "como instrumentalidad gubernamental", para "ayudar al Gobierno estadual en el desempeño de sus deberes fiscales y realizar más efectivamente su responsabilidad gubernamental de fomentar la economía de Puerto Rico, y especialmente su industrialización". 7 L.P.R.A. sec. 551. En adición, el Banco actúa "como agente fiscal ... agente pagador y ... agente consultivo financiero o informativo del [E.L.A.], de las agencias, instrumentalidades, comisiones, autoridades, municipios y subdivisiones políticas, del Gobernador, del Consejo Ejecutivo ... y del Tesorero de Puerto Rico". 7 L.P.R.A. sec. 552.

El Banco "como depositario o fideicomisario" tiene facultad de "adquirir bienes para sus fines corporativos por concesión, regalo, compra, legado o donación", y tiene capacidad para "demandar y ser demandado". 7 L.P.R.A. sec. 552. El poder corporativo es ejercido por una Junta de Directores compuesta por siete (7) miembros que son nombrados por el Gobernador con la aprobación del Consejo de Secretarios. 7 L.P.R.A. sec. 552. El Banco tiene autoridad para prestar y tomar prestado dinero, emitir bonos, pagarés, obligaciones hipotecarias, invertir sus fondos, crear empresas subsidiarias o afiliadas y "ejercer todos aquellos poderes incidentales que fueren necesarios o convenientes para los fines de realizar sus antedichos negocios y propósitos". 7 L.P.R.A. sec. 552. Las deudas u obligaciones en que incurra el Banco no lo serán del E.L.A. ni de sus municipios o subdivisiones políticas, todo lo contrario, es el Banco el único responsable de las mismas. 7 L.P.R.A. sec. 553.

El Banco está exento del pago de contribuciones sobre ingresos de todos sus bonos, pagarés, obligaciones hipotecarias u otro tipo de obligación. 7 L.P.R.A. sec. 553. El Banco tiene facultad de "nombrar, emplear y contratar los servicios de oficiales, agentes, empleados y auxiliares profesionales y pagar por tales servicios". 7 L.P.R.A. sec. 552. En adición, los empleados del Banco están excluidos de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*

La autoridad de Edificios Públicos, *por su parte*, es una corporación constituida como una instrumentalidad del Estado Libre Asociado de Puerto Rico, la cual ejercerá "funciones públicas y esenciales del Gobierno"; corporación que tiene poder para "tener sucesión perpetua". La misma es dirigida por una Junta de Gobierno, los miembros de la cual son nombrados por el Gobernador con el consejo y consentimiento del Senado. La Autoridad está autorizada, con el propósito de generar los fondos a ser utilizados por ella, para emitir bonos, los cuales garantiza el Gobierno, comprometiéndose éste con los bonistas "a no limitar ni alterar los derechos o poderes que por la presente se confieren a la Autoridad hasta tanto dichos bonos ... queden totalmente solventados y retirados".

La Autoridad tiene capacidad para demandar y ser demandada; tiene el poder para adquirir cualquier clase de bienes, en relación con los cuales tiene completo dominio y supervisión. La misma tiene, en adición, el poder de determinar el carácter y la necesidad de todos sus gastos y la forma y manera cómo los mismos deberán incurrirse, autorizarse y pagarse así como el poder de formular, adoptar, enmendar y

## II

■ Como es sabido, hay tres (3) grandes tipos de entidades públicas, a saber: (1) las agencias o los departamentos del Gobierno; (2) las corporaciones públicas creadas por estatuto, y (3) las corporaciones de emisión de acciones, organizadas al amparo de las leyes de corporaciones privadas, que son controladas parcial o totalmente por el Gobierno. *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982).

■ Hemos resuelto, además, que en la determinación de si determinada instrumentalidad es, o no, una corporación pública deben considerarse, entre otros, los siguientes criterios:

(a) si posee ingresos propios;

(b) si tiene autonomía fiscal para realizar préstamos, emisión de bonos y cuentas bancarias;

(c) si posee propiedades;

(d) si cuenta con una Junta de Directores;

(e) si puede aceptar donaciones;

(f) si tiene capacidad para concertar acuerdos o contratos.[4]

En cuanto a este aspecto, esto es, el de si una instrumentalidad del Gobierno funciona, o no, como *"empresa o negocio privado"*, expresamos en *A.A.A. v. Unión de Empleados A.A.A.*, 105 D.P.R. 437, 455 (1976), que los siguientes factores deben ser considerados:

> ... si los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si

derogar reglas y reglamentos, los cuales regirán las normas de sus negocios en general. Véase 22 L.P.R.A. sec. 902 *et seq.*

[4] Véase *Canchani v. C.R.U.V.*, 105 D.P.R. 352 (1976).

se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado ....

■ Luego de un examen y análisis de los poderes o facultades que por ley poseen tanto el Banco Gubernamental como la Autoridad de Edificios Públicos —véase esc. 2, ante— *no* tenemos duda alguna sobre el hecho de que *ambas* instrumentalidades en efecto son corporaciones públicas que funcionan como un negocio o empresa privada; conclusión que resulta inescapable cuando consideramos, *y aplicamos*, los "criterios" antes reseñados, establecidos por este Tribunal en *A.A.A. v. Unión de Empleados A.A.A.*, ante, y *Canchani v. C.R.U.V.*, 105 D.P.R. 352 (1976).

¿Significa necesariamente ello, como alega la parte demandante recurrente, que *no* debe aplicarse en el presente caso la doctrina de inmunidad patronal o, dicho de otra forma, puede ser la referida Autoridad considerada como un "tercero" a la luz de las disposiciones de la Ley de Accidentes del Trabajo? La contestación a dicha interrogante *no* resulta ser sencilla. De hecho, y como discutiremos más adelante en detalle, este Tribunal ha emitido, sobre este tema, decisiones que resultan ser un tanto inconsistentes entre sí. Tenemos el deber, en consecuencia, de enfrentarnos en forma decidida a la controversia planteada, sin temor alguno "de que se nos tache de inconsistentes". Véase *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40 (1980).

■ Debe mantenerse presente, por un lado, que las cor-

poraciones públicas, si bien operan de manera autónoma, no dejan por esto de ser instrumentalidades gubernamentales que responden a propósitos eminentemente públicos y que los servicios que prestan son de primera necesidad para el buen funcionamiento de nuestro Gobierno. Esto es, nos encontramos ante "corporaciones" que tienen deberes, responsabilidades y obligaciones para con el Estado y cuya "estructura corporativa" ha sido instituida por el Estado para unos fines públicos en particular. Por último, no debemos olvidar que en fin de cuentas, los fondos o dineros que utilizan dichas corporaciones en su operación en efecto son fondos o dinero públicos, esto es, dinero que pertenece al Estado. Como expresáramos en *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478, 493 (1990), "los fondos con que opera[n estas corporaciones] se consideran como públicos independientemente de que éstos no pasen a formar parte del presupuesto del Estado".

*Por otro lado*, y como expresáramos anteriormente, tanto el Banco Gubernamental de Fomento como la Autoridad de Edificios Públicos son corporaciones públicas que operan prácticamente como un "negocio privado", las cuales no reciben asignaciones significativas directas de fondos públicos de parte del Gobierno central, esto es, son corporaciones que realizan su función pública generando su propio dinero. De hecho, en el presente caso el único nexo existente entre ambas corporaciones lo es el contrato de arrendamiento mediante el cual el Banco ocupa espacio en el complejo de oficinas propiedad de la Autoridad. Ambas corporaciones pagan sus propias primas, por separado, al Fondo del Seguro del Estado, en protección de sus propios empleados, con dinero generado en sus respectivas operaciones, dinero que no forma parte del presupuesto general del Gobierno.

Es un hecho incuestionable que la Autoridad de Edificios Públicos se dedica, como propietaria, al arrendamiento y administración de la mayor parte de los edificios o estruc-

turas que albergan la maquinaria ejecutiva, legislativa y judicial del Estado Libre Asociado de Puerto Rico. Véase Art. 2 de la Ley Núm. 56 de 19 de junio de 1958 (22 L.P.R.A. sec. 903). Determinar que, como consecuencia de la mera otorgación de un contrato de arrendamiento llevado a cabo entre la Autoridad de Edificios Públicos y otra corporación o agencia pública, a la primera le cobija la doctrina de inmunidad patronal, realmente equivale a resolver que la referida Autoridad es "patrono estatutario" de prácticamente todos los empleados y funcionarios públicos de nuestro país, lo cual parece no justificarse en vista de la estructura, facultades y poderes que le concede a la referida autoridad su ley creadora.

El presente caso, a nuestra manera de ver las cosas, es distinguible del caso de *F.S.E. v. E.L.A.*, ante. En este último, se trataba de *agencias o departamentos* del Gobierno —la Policía de Puerto Rico y el Departamento de Instrucción Pública— cuyos fondos operacionales provienen *directamente* del Estado. Esto es, se trataba de agencias o departamentos que son subsidiadas, *en su totalidad y directamente*, por el Estado, siendo este último, en consecuencia, el *patrono real* de los empleados de ambas agencias; razón por la cual, no hay duda, se justifica lo expresado en dicho caso a los efectos de que la "fuente del dinero para el pago de la prima [es] una sóla: el tesoro público".

■ Somos del criterio que el caso que hoy ocupa nuestra atención plantea una situación distinta. No hay duda de que, tratándose de corporaciones públicas, el dinero que generan dichas corporaciones tiene que, *por necesidad*, ser catalogado como "dinero público", dinero con el cual se pagan las primas al Fondo del Seguro del Estado.[5] *Ahora bien*, ese dinero no proviene directamente del presupuesto general del Gobierno, como es el caso de las agencias o los

---

[5] Entendemos, sin embargo, que ese *tecnicismo no* puede *obliterar* el hecho de que se trata de dos (2) corporaciones públicas que operan, *a todos los fines prácticos*, como un negocio o empresa privada.

departamentos gubernamentales como el Departamento de Educación y la Policía de Puerto Rico. *Un análisis de nuestras decisiones sobre la materia revela que hemos enfatizado* —respecto a la determinación sobre si una entidad debe ser considerada como "tercero", a la luz de las disposiciones del Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo,[6] 11 L.P.R.A. sec. 31, o si, por el contrario, le debe cobijar la inmunidad de "patrono estatutario" respecto al obrero lesionado— *que esta determinación dependerá, de manera principal, de las relaciones contractuales entre el patrono directo del obrero y el otro patrono, esto es, el alegado "segundo" patrono estatutario*; ello así, por cuanto *únicamente se justifica* que se le otorgue inmunidad al patrono "sobre quien recae el peso económico del sistema, mediante el pago de cuotas anuales", *no* existiendo justificación alguna "en extender la inmunidad que confiere la ley a [personas] que no contribuyen personalmente para sufragar los gastos del Fondo cuando éstos han incurrido en negligencia y han causado daños a otros empleados". *López Rodríguez v. Delama*, 102 D.P.R. 254, 258–259 (1974).

Dicho de otra forma, y como expresáramos en *Torres Solís et al. v. A.E.E. et als.*, 136 D.P.R. 302, 310 (1994), la determinación de

> ... si un demandado es o no *"patrono estatutario"* conlleva examinar las relaciones contractuales entre éste y el patrono real de los obreros. *Vda. de Costas v. P.R. Olefins*, supra. *"En ausencia de ese nexo jurídico que relaciona al patrono directo del obrero con el causante de la lesión en la* 'obligación legal común', *de asegurar al empleado con el Fondo, estaremos ante el* 'tercero', *desprovisto de la protección estatutaria contra demandas de obreros lesionados en el trabajo." ...Santiago Hodge v. Parke Davis Co.*, supra, pág. 12. Véase *Ruiz Díaz v. Vargas Reyes*, supra. (Énfasis suplido y en el original.)

En el presente caso, sobre la Autoridad de Edificios Pú-

---

[6] Ley Núm. 45 de 18 de abril de 1935.

blicos *no* ha recaído el peso de los gastos relativos al accidente laboral que sufriera la aquí demandante María Torres Rodríguez *como tampoco* la Autoridad contribuyó al pago de las primas que pagó al Fondo el Banco Gubernamental de Fomento respecto a sus empleados.[7] En vista de lo antes expuesto, *resolvemos que la parte demandante recurrente tiene causa de acción, en daños y perjuicios, contra la recurrida Autoridad de Edificios Públicos por cuanto ésta puede, y debe, ser considerada como el "tercero" al que se refiere el antes citado Art. 31 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.*

*Se dictará Sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente. El Juez Presidente Señor Andréu García no intervino.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

Comparto el propósito que persigue la mayoría del Tri-

---

[7] Esa, precisamente, fue la *razón de decidir* en el más reciente de los casos en que se nos planteó esta interrogante, caso que este Tribunal resolvió mediante el mecanismo procesal decisorio de la sentencia, decisión que *no* constituye precedente. En *Morales v. Autoridad de Carreteras*, 140 D.P.R. 1, 7 (1996), este Tribunal resolvió, *a base del fundamento antes expresado*, que un miembro de la Policía de Puerto Rico, que sufrió un accidente en uno de los peajes de la Autopista Luis A. Ferré como consecuencia de la alegada negligencia de la Autoridad de Carreteras, podía demandar en daños y perjuicios a la referida Autoridad de Carreteras. Al así resolver, este Tribunal expresó que *no* resultaba procedente "extender la inmunidad estatutaria a la Autoridad, pues ésta no contribuyó para sufragar los gastos del Fondo en el tratamiento" del policía lesionado.

Igual solución se impone en el presente caso; ello no obstante lo resuelto por este Tribunal, igualmente mediante sentencia, en el caso de *Soc. de Gananciales v. E.L.A.*, 129 D.P.R. 961 (1992). En dicho caso resolvimos que la Autoridad de Edificios Públicos *no* cualificaba como el "tercero" al que se refiere el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11, por alegadamente ésta no ser una "corporación pública". *Un análisis posterior de dicha situación nos convence de que dicha conclusión es una errónea.* En consecuencia, lo allí resuelto, en todo lo que sea inconsistente con la decisión hoy emitida, *debe entenderse como expresamente revocado.*

bunal en este caso, de intentar rectificar y esclarecer la norma que rige al determinar si aplica la doctrina de inmunidad patronal en situaciones en las cuales una instrumentalidad gubernamental es demandada por daños y perjuicios por un empleado de otra entidad pública. Nuestras decisiones anteriores sobre el particular ciertamente no han estado basadas todas en fundamentos acertados, tal como señalé en mi disenso en *Morales v. Autoridad de Carreteras*, 140 D.P.R. 1 (1996).

En particular, me parece correcto abandonar el esquema decisorio usado tanto en *Soc. de Gananciales Maldonado v. E.L.A.*, 129 D.P.R. 961 (1992), como en *Morales v. Autoridad de Carreteras*, supra, con arreglo al cual la aplicación de la doctrina de inmunidad patronal dependía de dudosas y confusas distinciones sobre si la entidad pública en cuestión era una "instrumentalidad del Estado", o si, en cambio, era una "corporación pública". Estoy conforme con lo que resuelve la mayoría ahora, en cuanto a que el criterio decisivo deber ser el de cuál entidad pagó las primas del Fondo del Seguro del Estado con respecto al empleado demandante. Este criterio responde a lo dispuesto en la propia Ley del Sistema de Compensaciones por Accidentes del Trabajo y a nuestros pronunciamientos sobre el particular en la decisión medular de *F.S.E. v. E.L.A.*, 111 D.P.R. 402 (1981). De este modo, correctamente se revoca la errónea decisión de este Tribunal de que la Autoridad de Edificios Públicos goza de inmunidad patronal en casos como el de autos, tomada en *Soc. de Gananciales Maldonado v. E.L.A.*, supra, y que fue reiterada asimismo por una mayoría de este Foro hace sólo unos meses en *Morales v. Autoridad de Carreteras*, supra.

Finalmente, confío en que las expresiones, en la opinión de la mayoría en el caso de autos, sobre los distintos "tipos de entidades públicas", en particular las relativas a si una instrumentalidad del Gobierno funciona o no como negocio privado, no den lugar a su vez a una confusión en casos

futuros. Tales expresiones no son realmente necesarias, ya que no es sobre ellas que se apoya la decisión mayoritaria; adolecen de algunas de las incompatibilidades y perplejidades que la mayoría intenta superar con dicha opinión, y no reflejan las acotaciones que recientemente le hicimos a los criterios normativos en cuestión en *J.R.T. v. Corp. del Conserv. Música P.R.*, 140 D.P.R. 407 (1996).