JULIA RIVERA DE VINCENTY, en su carácter de ADMINIS-
TRADORA DEL FONDO DEL SEGURO DEL ESTADO, (ex rel.
DOLORES RAMOS MARRERO), demandante y recurrida,
*v.* MARÍA SOCORRO LACOT, ESTADO LIBRE ASOCIADO DE
PUERTO RICO y OTROS, demandados y peticionarios.

*Número:* O-81-82          *Resuelto:* 25 de junio de 1981

*Héctor A. Colón Cruz, Procurador General,* y *Lirio Bernal, Pro-
curadora General Auxiliar,* abogados de los peticionarios;
*Manuel G. Pérez, Antonio Acevedo Torres* y *Jorge Márquez
Gómez,* abogados de la recurrida.

Eʟ Juᴇᴢ Asᴏᴄɪᴀᴅᴏ Sᴇ̃ɴᴏʀ Nᴇɢʀᴏ́ɴ Gᴀʀᴄɪ́ᴀ emitió la opinió del Tribunal.

Dolores Ramos Marrero, en funciones de su empleo como conferenciante de la Policía de Puerto Rico en una escuela del Departamento de Instrucción Pública tuvo un accidente en una de las escaleras del plantel. Como resultado de la caída sufrió daños y recibió tratamiento médico y beneficios económicos del Fondo del Seguro del Estado. El Fondo se subrogó y conjuntamente con Ramos demandó al Estado Libre Asociado por ser el Departamento de Instrucción Pública una de sus agencias, alegando negligencia en las condiciones y conservación de las escaleras.(¹)

El Estado solicitó la desestimación bajo la tesis de que no procedía una acción subrogatoria del Fondo en su contra por *no* ser un tercero en relación a los daños sufridos por el empleado lesionado. Alegó que la Policía e Instrucción Pública son instrumentalidades adscritas a la Rama Ejecutiva del Gobierno, y, como tales, no tienen capacidad jurídica para demandar y/o ser demandadas. Su representación la ostenta el Estado y sus presupuestos funcionales provienen de las asignaciones contenidas en el Presupuesto Anual de Gobierno.

De otro lado, los demandantes en oposición adujeron que de la enumeración de entidades gubernamentales establecida por el Art. 2 de la Ley de Compensaciones a Obreros puede de manera palmaria colegirse la intención del legislador a los efectos de reconocer como patrono individual e independiente a todas y cada una de las agencias del E.L.A. Este artículo en sus párrafos pertinentes dispone:

> Est[a] [ley] será aplicable a todo patrono que emplee uno o más obreros o empleados comprendidos en el mismo cual-

---

(¹) Ramos Marrero reclama daños ascendentes a $75,000 por alegadas contusiones múltiples, limitación de los movimientos, neurosis depresiva severa Clase III, por la cual se le reconoció incapacidad total y permanente. El Administrador del Fondo reclama gastos incurridos ascendentes a $27,739.52.

quiera que sea su salario. *El Gobierno del Estado Libre Asociado, y los diversos gobiernos municipales, juntas, comisiones, autoridades, instrumentalidades, corporaciones públicas y agencias del Estado Libre Asociado, se considerarán como patronos* y como tales serán comprendidos dentro de las disposiciones de est[a ley] en cuanto a los obreros, empleados y funcionarios que utilicen.

.    .    .    .    .    .    .    .

Los diversos departamentos del gobierno, juntas, negociados o comisiones, y los gobiernos municipales, incluirán en sus presupuestos anuales, y en sus presupuestos especiales, el montante total de primas requeridas por el Administrador del Fondo del Estado para el seguro de sus empleados. (Énfasis nuestro.)

La posición del Fondo encontró eco ante el tribunal de instancia, el cual se negó a desestimar. Mediante orden de mostrar causa examinamos la cuestión.

I

La solución requiere que repasemos el concepto de tercero y su fundamento bajo el esquema vigente en la Ley de Compensaciones. A tal efecto, en *López Rodríguez* v. *Delama*, 102 D.P.R. 254, 258 (1974), apuntamos que el tercero es ". . . toda persona aparte del empleado lesionado y su *patrono asegurado*". Sobre su base allí indicamos que la razón de ser del tercero y la inmunidad conferida a un asegurado radica en que:

[L]a ley establece un sistema de compensaciones por accidentes del trabajo mediante el cual el obrero recibe compensación independientemente de quién sea responsable del accidente. *Se ha considerado que es razonable y justo que en reciprocidad se le otorgue inmunidad al patrono, sobre quien recae el peso económico del sistema, mediante el pago de cuotas anuales.* Pero ciertamente no hay justificación en extender la inmunidad que confiere la ley a [personas] *que no contribuyen personalmente para sufragar los gastos del Fondo* cuando éstos han incurrido en negligencia y han causado daños a otros empleados. *Kimbro* v. *Holladay*, 154 So. 368 (1934); *Merchants Mut. Cas. Co.* v. *Tuttle*, 101 A.2d 262

(1953); *Churchill* v. *Stephens*, 102 A. 657 (1917). (Énfasis nuestro.) Págs. 258–259.

Subsiguientemente, en *Lugo Sánchez* v. *A.F.F.*, 105 D.P.R. 861, 866–867 (1977), precisamos que es aquella ". . . persona *extraña, ajena y separada de la interacción jurídica que relaciona al patrono estatutario*" y a un contratista con el Fondo "en la obligación legal común de asegurar sus obreros y empleados". Dijimos que "[b]ajo ninguna premisa puede considerarse tercero o extraño causante de daño al patrono a quien la Ley expresamente dispensa de la obligación de asegurar y quien es parte regulada por el esquema de seguro exclusivo compulsorio".

■ De los pronunciamientos antes transcritos se desprende que el concepto de tercero está inexorablemente atado a: (1) la existencia o no de la obligación de asegurar; y (2) si efectivamente está la persona cubierta por el Fondo, con referencia al obrero reclamante. Se enfatiza, pues, que la inmunidad del patrono responde básicamente al hecho de que es él quien asume la responsabilidad real o potencial de indemnizar a su empleado mediante el pago de las primas. En el caso de autos es el Estado Libre Asociado que del tesoro estatal asigna un presupuesto a sus agencias del cual se estarán pagando las primas aludidas, por lo tanto, es el Estado el patrono sobre el cual recae la responsabilidad del pago de las primas. [2]

La solución dada a situaciones análogas a la de autos en distintas jurisdicciones norteamericanas ha sido reconocer que aunque una persona sea un empleado de una agencia gubernamental, no deja de serlo del Estado.

---

[2] Efectivamente es el Estado Libre Asociado quien a través del Secretario de Hacienda desembolsa el pago de las primas. El Departamento de Instrucción Pública al igual que la Policía de Puerto Rico son dos agencias adscritas a la Rama Ejectuva del Gobierno. Ninguna tiene capacidad jurídica para demandar y ser demandada, por lo que, para recobrar daños causados por éstas, hay que demandar al E.L.A. Por otro lado, ambos departamentos obtienen sus fondos del Tesorero Estatal del Gobierno (véase 23 L.P.R.A. secs. 101 a 109; 18 L.P.R.A. sec. 308K), y su presupuesto es una asignación del Presupuesto Anual de Gobierno.

Se cuestiona la responsabilidad de un estado y sus subdivisiones cuando hay más de una agencia envuelta en el empleo de un individuo. *Aunque un empleado sea nominalmente empleado de un estado, junta o comisión, el estado será considerado como su patrono real.* De modo que un individuo empleado por una comisión estatal de carreteras se ha tenido como un empleado estatal y no de la comisión de carreteras, debido a que la comisión no fue considerada una subdivisión política del estado. 2 Schneider, *Workmen's Compensation Law*, Sec. 388, pág. 327 (perm. ed. 1942).

En 2A Larson, *Workmen's Compensation Law*, Sec. 72.80, pág. 14-116 (1976), encontramos una situación parecida a la que nos ocupa y se dijo: "Igualmente, a nivel estatal, un empleado del Departamento de Carreteras, quien fuera golpeado y lastimado por un automóvil manejado por un patrullero estatal del Departamento de Seguridad Pública no puede llevar una acción de ley en contra del Departamento de Seguridad Pública, ya que ambos son empleados del Estado".

## II

Advertimos que el cuadro fáctico que atendemos en el caso de autos presenta lo que los tribunales de los Estados Unidos han denominado *doctrina de la doble capacidad (the dual capacity doctrine).* Larson la describe como aquella bajo la cual "un patrono normalmente inmune a una reclamación por daños y perjuicios en virtud del principio de remedio exclusivo puede ser responsable hacia su empleado si ostenta, además de su capacidad como patrono, una segunda capacidad dimanante de una obligación independiente a la impuesta como patrono". *Op. cit.*, Sec. 72.80, pág. 14-112.

La doctrina de la doble capacidad pretende corregir la anormalidad de que los patronos se escuden bajo el manto de la inmunidad que les ofrece la ley, aun cuando el daño causado al empleado no surge de la relación empleado-patrono y sí de una acción torticera del patrono cuando

éste actúa en otra capacidad. La doctrina está en evolución. No ha sido acogida por razón de que propende a limitar la inmunidad patronal y ello tiende a abrir una brecha en el sistema de protección laboral. La mayoría de las jurisdicciones americanas la rechazan. "Una cosa está clara. No se determinará la existencia de capacidad dual simplemente porque el patrono posea un número de departamentos o divisiones cuyo funcionamiento y operaciones estén tal vez separados completamente. El asunto frecuentemente surge respecto a los gobiernos. . . . Se han hecho reiterados intentos de subdividir una municipalidad [o a nivel de gobierno estatal], e invocar una causa de acción a favor de un empleado de un . . . departamento contra otro departamento como si *fuera un extraño*. Consistentemente estos intentos han fracasado." Larson, *op. cit.*, págs. 14-115, 14-116; Schneider, *op. cit.*, pág. 327. Véase, además, *Walker* v. *City and County of San Francisco*, 219 P.2d 487 (1950); *Bross* v. *City of Detroit*, 274 N.W. 714 (1933); *De Giuseppe* v. *City of New York*, 79 N.Y.S.2d 163 (1948); *Thompson* v. *Lewis Cty.*, 595 P.2d 541 (1979).

En resumen, no creemos que el lenguaje utilizado por la Ley de Compensaciones, a los fines de determinar los empleados que están cubiertos, en el sentido de que las agencias e instrumentalidades del Estado "se consideran patronos individuales e independientes", constituye suficiente fuente estatutaria para destruir el manto de inmunidad patronal del Estado. La fuente de dinero para el pago de la prima es una sola: el tesoro público. Tanto constitucional como estatutariamente, el Departamento de Instrucción Pública y la Policía —aunque distintos para fines administrativos en el descargo de sus responsabilidades— sus empleados y funcionarios tienen un mismo patrono: el Estado Libre Asociado. No podemos concluir que es un extraño ajeno a ambos. El deber primordial del Estado es proveer servicios esenciales a la ciudadanía. En las agencias mencionadas, seguridad y educación. Estas

gestiones, si bien se implementan separadamente, en substancia y en última instancia representan el ejercicio de una obligación común y una sola capacidad, la gubernamental.

Cometió error el tribunal de instancia al negarse a desestimar la acción. *Se dictará la correspondiente sentencia.*