# 96 DTA 67

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE PONCE Y AIBONITO**
**PANEL I**

LUIS G. MARRERO TORRES, EX-REL PEDRO SOTO RIOS, EN SU CARACTER DE
ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO
Apelados

v.

AIREKO CORPORATION, ET AL.
Apelado

Núm. KLAN-95-00512

San Juan, Puerto Rico, a 30 de abril de 1996

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Córdova Arone, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

En el presente recurso nos corresponde resolver si para fines de la Ley de Compensaciones de Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, la Autoridad de Edificios Públicos puede ser considerada como un patrono ajeno y separado del Estado Libre Asociado de Puerto Rico. Nuestra respuesta es en la afirmativa.

## I

El presente recurso tiene su génesis en una acción de daños y perjuicios instada por el Sr. Luis G. Marrero Torres como consecuencia de una caída que sufrió mientras utilizaba una escalera eléctrica instalada en el edificio del Centro Judicial de Ponce. Para la fecha de los hechos el demandante laboraba como Procurador de Menores, adscrito al Departamento de Justicia del Estado Libre Asociado de Puerto Rico. Su oficina y lugar de trabajo estaban ubicados en el mencionado centro

judicial.

En la demanda se incluyó como parte demandada a la compañía que instaló la escalera eléctrica, Vermil Elevator Systems Service (en adelante *"Vermil"*), quien a su vez trajo como tercera demandada a la Autoridad de Edificios Públicos (en adelante *"la Autoridad"*). Vermil alegaba que la Autoridad de Edificios Públicos era la dueña del edificio y tenía bajo su cuidado y control la escalera en controversia.

Posteriormente, la Asociación de garantía de Seguros Misceláneos compareció en interés de la tercera demandada y solicitó la desestimación de la demanda contra tercero. En dicha solicitud se alegaba que la Autoridad de Edificios Públicos es una instrumentalidad del Estado Libre Asociado de Puerto Rico y que, siendo el demandante un empleado del Estado, la Autoridad está cobijada por la inmunidad patronal bajo la Ley de Compensaciones por Accidentes del Trabajo, *supra*.

Vermil presentó moción en oposición a la solicitud de desestimación alegando que la Autoridad de Edificios Públicos es una entidad corporativa con personalidad jurídica propia y separada del Estado Libre Asociado de Puerto Rico, y que a los fines de la Ley de Compensaciones por Accidentes del Trabajo, *supra* debe considerársele como un tercero no protegido por la inmunidad patronal.

Finalmente el 30 de marzo de 1995, el Tribunal de Primera Instancia, Sala Superior de Ponce (Hon Leida González Degró, J.) dictó sentencia parcial en el caso de autos desestimando la demanda contra tercero, resolviendo que la Autoridad es un tercero protegido por la inmunidad patronal del Estado Libre Asociado de Puerto Rico. El tribunal *a quo* basó su determinación en la sentencia emitida por el Tribunal Supremo de Puerto Rico en el caso *Sociedad de Gananciales v. E.L.A.,* 130 D.P.R. ___ (1992), **92 J.T.S. 19**. Es de ésta sentencia parcial que se apela ante nos.

En su escrito la parte apelante señala que el tribunal *a quo* cometió dos errores, a saber:

*"Primer error señalado: Incidió en error el Honorable Tribunal de Instancia al determinar que para fines de la Ley de Compensaciones por Accidentes del Trabajo, el Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos son una misma entidad.*

*Segundo error señalado: Incidió en error el Honorable Tribunal de Instancia al determinar que la inmunidad patronal que cobija al Estado Libre Asociado de Puerto Rico en el caso de autos debe extenderse a la Autoridad de Edificios Públicos ya que ésta no puede ser considerada como un tercero a los fines de la Ley de Compensaciones por Accidentes del Trabajo "*

## II

Para resolver la controversia ante nuestra consideración es necesario discutir la naturaleza y propósito de la creación de la Autoridad de Edificios Públicos de manera que podamos determinar si dicha agencia está protegida por la inmunidad patronal que cobija al Estado Libre Asociado de Puerto Rico como patrono asegurado a los fines de la Ley de Compensaciones por Accidentes del Trabajo.

La Autoridad de Edificios Públicos fue creada en virtud de las disposiciones de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. secs 901 *et seq.* Según esta ley la Autoridad de Edificios Públicos fue establecida como una entidad corporativa con personalidad jurídica propia; *"como un cuerpo corporativo y político con sucesión corporativa"*, y con *"completo dominio y supervisión sobre todas y cada una de sus propiedades y actividades incluyendo el poder de determinar el carácter y la necesidad de todos sus gastos, y el modo como los mismos deberán incurrirse, autorizarse y pagarse "*. Además, se establece con capacidad *"para demandar y ser demandada."* 22 L.P.R.A. secs. 902 y 906.

Al ser creada como ente corporativo con personalidad jurídica propia la Autoridad de Edificios Públicos tiene la finalidad de poder actuar con independencia del Estado Libre Asociado de Puerto Rico. Si hacemos un análisis de la discusión habida en la Cámara de Representantes al momento de ser sometido para su aprobación el Proyecto del Senado 297, el cual dio paso a la mencionada Ley Núm 56, nos podemos percatar de dicha finalidad de independencia. De acuerdo con el informe sometido por la Comisión de Gobierno Estatal sobre el P. del S. 297, la intención de este proyecto era

*"crear un organismo con configuración propia, con facultades y deberes autónomos tendiente a facilitar la más rápida y eficaz tramitación en la adquisición, arrendamiento, construcción y mejoras de facilidades de oficinas para el Estado Libre Asociado de Puerto Rico".* ■

Por otro lado, el informe presentado por la Comisión de Obras y Terrenos Públicos establecía como propósito fundamental del P. del S. 297 lo siguiente:

*"Este proyecto es con el propósito de estructurar un organismo gubernamental con suficiente poder y autonomía que facilite los trámites necesarios para el financiamiento de la adquisición, arrendamiento, construcción y mejoras de facilidades de oficinas para el Estado Libre Asociado. La Autoridad que se crea, aunque muy parecida a la Compañía existente, creada por la Ley Núm. 117 aprobada el 1 de julio de 1953, funcionaría independientemente regida por cinco (5) miembros nombrados por el honorable Gobernador. Actualmente la Compañía [del Centro Gubernamental de Oficinas de Puerto Rico] está adscrita al Departamento de Obras Públicas, sin suficiente independencia para facilitar la contratación de empréstitos bien sea mediante la emisión de bonos u otras formas que la nueva Autoridad crea conveniente. Diario de Sesiones, supra, pág. 1868."*

De una somera lectura de los informes antes mencionados nos podemos percatar de que la Autoridad de Edificios Públicos fue creada con el propósito de que funcionara con independencia del Estado Libre Asociado de Puerto Rico.

En *A.A.A. v. Unión de Empleados A.A.A.,* 105 D.P.R 437 (1976), el Tribunal Supremo de Puerto Rico enumeró algunos de los criterios que deben tomarse en consideración para determinar si una entidad gubernamental opera como una empresa privada. A tales efectos nos dice este caso que debemos considerar entre otros los siguientes criterios:

*".....si los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una agencia o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado; "*

Al hacer esta enumeración nuestro más alto foro aclaró que ninguno de los criterios es determinante por sí sólo, sino que es necesario examinar en cada caso la conjunción de factores existentes para resolver si la instrumentalidad en controversia funciona o no como un negocio privado.

De acuerdo con la ley que crea la Autoridad de Edificios Públicos podemos percatarnos de que a ésta se le otorgó el poder necesario *"para tener completo dominio y supervisión sobre todas y cada una de sus propiedades y actividades incluyendo el poder de determinar el carácter y la necesidad de todos sus gastos, y el modo como los mismos deberán incurrirse, autorizarse y pagarse",* L.P.R.A. sec. 906 (3); se le dio poder *"para demandar y ser demandada, querellar y defenderse en todos los tribunales de justicia y organismos administrativos",* 22 L.P.R.A. sec. 906 (4); se le autorizó a emitir bonos, lo cual le concede la autonomía fiscal deseada y es cónsono con la idea de excluirla de la deuda pública, 22 L.P.R.A. sec. 907; para facilitarle la gestión de fondos y permitirle realizar sus fines corporativos, se le concedió exención contributiva sobre sus bienes, propiedades, bonos y las ventas devengadas por éstos, 22 L.P.R.A. sec. 909; se le excluyó de la aplicación de las disposiciones de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 911; y se le facultó para arrendar total o parcialmente sus propiedades y percibir rentas, 22 L.P.R.A. sec. 916.

Por otro lado, los empleados de la Autoridad de Edificios Públicos pueden negociar colectivamente e irse a la huelga, lo que está vedado a los demás empleados del Estado Libre Asociado. Tomamos conocimiento judicial que, de hecho, los empleados de la Autoridad están unionados y tienen un convenio colectivo con ésta.

Analizados los poderes otorgados a la Autoridad de Edificios Públicos a la luz de los criterios esbozados en *A.A.A. v. Unión Empleados A.A.A., supra*, concluimos que esta entidad gubernamental concebida como una corporación o instrumentalidad con autonomía y personalidad jurídica separada del Estado Libre Asociado de Puerto Rico, opera como una empresa o negocio privado.

Nuestra conclusión encuentra apoyo, además, en la opinión del Secretario de Justicia, Número 9 de 1984, donde se aclaró que no obstante el hecho de que las corporaciones públicas son parte integrante de la rama ejecutiva del Estado Libre Asociado de Puerto Rico, éstas *"se diferencian de otros organismos en esa rama de gobierno, ya que el uso de la ficción corporativa para llevar a cabo sus actividades gubernamentales tiene la finalidad de librarlas de ciertas restricciones que pesan sobre los departamentos tradicionales del Gobierno, logrando cierta flexibilidad y adaptabilidad característica de las empresas comerciales privadas"*. Op. Sec. Just. Núm. 9 de 1984.

El caso de autos es completamente distinguible de *F.S.E. v. E.L.A*, 111 D.P.R. 402 (1981). ■ Allí se trataba de una conferenciante de la Policía de Puerto Rico que sufrió un accidente en una escuela perteneciente al entonces Departamento de Instrucción Pública mientras se encontraba en funciones de su empleo. Tanto la Policía como el Departamento de Instrucción Pública eran agencias totalmente dependientes del Estado Libre Asociado de Puerto Rico. Ninguna de ellas posee personalidad jurídica propia ni generan sus propios ingresos.

En el escolio número 2 del caso que estamos citando nuestro más alto foro dijo:

*"Efectivamente es el Estado Libre Asociado quien a través del Secretario de Hacienda desembolsa el pago de las primas. El Departamento de Instrucción Pública al igual que la Policía de Puerto Rico son dos agencias adscritas a la Rama Ejecutiva del Gobierno. Ninguna tiene capacidad jurídica para demandar y ser demandada, por lo que, para recobrar daños causados por éstas, hay que demandar al E.L.A. Por otro lado ambos departamentos obtienen sus fondos del Tesorero Estatal del Gobierno (véase 23 L.P.R.A. secs 101 a 109; 18 L.P.R.A sec. 308K), y su presupuesto es una asignación del Presupuesto Anual de Gobierno."*

Como podemos observar en *F.S.E v. E L.A., supra*, la determinación del Tribunal Supremo de Puerto Rico a los efectos de extender la inmunidad patronal del Estado a las instrumentalidades en controversia estuvo basada básicamente en la dependencia fiscal de éstas del sistema central y en su falta de capacidad para demandar y ser demandadas. La situación en el caso de autos es completamente distinta.

Somos conscientes de que nuestra determinación se aparta de lo resuelto por el Tribunal Supremo de Puerto Rico mediante sentencia en el caso *Sociedad de Gananciales v. E.L.A., supra*, ■ por entender, y es que estamos convencidos de que la Autoridad de Edificios Públicos es una entidad independiente y separada de la relación patronal y contractual existente entre el perjudicado en el caso de autos y el Estado Libre Asociado de Puerto Rico.

En *Morales Morales y Autoridad de Carreteras, supra*, ■ nuestro más alto foro resolvió, igualmente mediante sentencia, que no se podía extender la inmunidad estatutaria del Estado a la Autoridad de Carreteras por considerarla (1) una entidad separada del estado; (2) porque la fuente de dinero para el pago de la prima del seguro de los empleados de la Autoridad no es el tesoro público sino sus propios ingresos; (3) porque la Autoridad de Carreteras es un tercero extraño a la relación contractual y patronal establecida entre la Policía de Puerto Rico y el perjudicado, y; (4) porque la Autoridad de Carreteras no contribuyó para sufragar los gastos del Fondo en el tratamiento del perjudicado.

No podemos visualizar la distinción que hace nuestro más alto foro entre la Autoridad de Edificios

Públicos y la Autoridad de Carreteras puesto que la primera cumple con todos los requisitos utilizados por el Tribunal Supremo para no extender la inmunidad patronal a la Autoridad de Carreteras en el caso que estamos citando.

En resumen, concluimos que la Autoridad de Edificios Públicos es una entidad distinta y separada del Estado Libre Asociado de Puerto Rico, la cual posee personalidad jurídica propia y goza de autonomía fiscal, operando de esta manera como una empresa o negocio privado.

El Art. 20 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec 21, establece lo que en nuestro sistema se conoce como la inmunidad patronal o exclusividad de remedio. A tales fines nos dice el referido artículo:

*"Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio contra el patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo; en el caso de accidentes, enfermedades o muerte de los obreros, o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente Capítulo."*

No obstante lo dispuesto por el artículo antes citado, la Ley de Compensaciones por Accidentes del Trabajo establece que esta inmunidad no se extiende a terceros responsables del daño sufrido por el obrero o empleado. Dispone el artículo de la mencionada ley, 11 L.P.R.A. sec. 32:

*"En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción en la forma siguiente:"*

Nuestro Tribunal Supremo ha resuelto en varias ocasiones que el tercero sujeto a demanda por daños y perjuicios a los fines del Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo es aquella persona extraña, ajena y separada de la interacción jurídica que relaciona al patrono con el Fondo del Seguro del Estado en la obligación legal de asegurar sus obreros y empleados a tenor de lo dispuesto en la ley *Lugo Sánchez v. AFF*, 105 D.P.R. 861 (1977); *López Rodríguez v. Delama,* 102 D.P.R. 254 (1974).

Como podemos observar en el caso de autos, de acuerdo con los fundamentos antes esbozados la Autoridad de Edificios Públicos es una persona ajena y separada de la relación que tiene el demandante con su patrono. En este caso el Sr. Luis G. Marrero es empleado del Estado Libre Asociado de Puerto Rico y no de la Autoridad de Edificios Públicos por lo que es el Estado, no la Autoridad, quien está obligado a pagar las primas correspondientes al Fondo del Seguro del Estado. Por ende en esta relación la Autoridad es un tercero a los fines de la Ley de Compensaciones por Accidentes del Trabajo.

## III

Por los fundamentos antes expuestos, se revoca la sentencia parcial apelada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la señora Secretaria General. El Juez Sánchez Martínez emitió voto particular de conformidad.

Sonia Pacheco Román
Secretaria General

**1.** Diario de Sesiones, V. 10, T 4, pág. 1867 (1958); véase además, opinión disidente de la Hon. Miriam Naveira de Rodón en *Sociedad de Gananciales v. E.L.A.,* 130 D.P.R. ___ (1992) **92 J.T.S. 19.**

**2.** Este es el caso utilizado por el Tribunal Supremo como precedente en la sentencia del caso *Sociedad de Gananciales v. E.L.A., supra,* el cual a su vez fue utilizado por el Tribunal de Primera Instancia para sostener la sentencia que se apela en el caso de autos.

**3.** Este caso es citado por nuestro más alto foro en la sentencia emitida en el caso *Morales Morales v. Autoridad de Carreteras,* ___ D.P.R. ___ (1996), **96 J.T.S. 12.** No obstante, el Tribunal Supremo señala mediante una nota al calce que el caso *Sociedad de Gananciales v. E.L.A., supra,* es una *"[s]entencia que no constituye precedente."*

**4.** Este caso surge como resultado de una demanda en daños y perjuicios incoada por un policía estatal contra la Autoridad de Carreteras por los daños sufridos en un accidente del trabajo al caerse de la motora en que viajaba cuando ésta resbaló en una mancha de aceite en la Autopista Luis A Ferré. Dicha autopista está bajo el control y mantenimiento de la Autoridad de Carreteras.

## VOTO PARTICULAR Y DE CONFORMIDAD DEL JUEZ DE APELACIONES SR. SANCHEZ MARTINEZ — 96 DTA 67

San Juan, Puerto Rico, a 30 de abril de 1996

He unido mi voto a la sentencia de hoy sencillamente porque la decisión del Tribunal Supremo emitida en el caso *Soc..de Gananciales v. E.L.A.,* ___D.P.R. ___ (1992), **92 J.T.S. 19,** en la cual el foro de primera instancia descansó para resolver que la Autoridad de Edificios Públicos es el mismo patrono que el Estado Libre Asociado de Puerto Rico para fines de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.,* es una sentencia que no constituye precedente y cuyo valor persuasivo es escaso, atendidos sus fundamentos.

Aunque la norma parece ser que el Tribunal Supremo resuelve un caso por sentencia sin opinión *"cuando el mismo plantea cuestiones reiteradamente resueltas por este Tribunal", Rivera Maldonado v. E.L.A.,* 119 D.P.R. 74, 80 n.7 (1987), en el caso de autos no es invocable tal norma pues, como bien demuestra nuestro dictamen del día de hoy, la situación fáctica del precedente invocado en *Soc. de Gananciales v. E.L.A.,* ni siquiera es parecida a la del posterior caso. Debo inferir, entonces, que si en *Soc. de Gananciales v. E.L.A.,* primero, y en *Morales Morales v. Autoridad de Carreteras,* ▉ después, el Tribunal Supremo se valió del mecanismo de sentencia sin opinión para resolver dichos casos es porque no desea dejar el asunto resuelto de forma normativa. No soy quién para cuestionar los motivos de dicha renuencia a pautar el derecho en un área de frecuente litigación, pero puedo entrever que al no pautarse el derecho de forma normativa, se ha querido dejar el asunto abierto para resolverlo caso a caso, según las circunstancias particulares de cada litigio, y dejarlo al análisis individual que pueda hacer cada juez del sistema, posponiendo para otra ocasión la revisión o rectificación del asunto. La resolución de la controversia del caso de autos por opinión, aunque fuera revocando nuestro dictamen, establecería un precedente obligatorio y así no llegarían más casos ante nuestra consideración sobre esta misma controversia.

**HIRAM SANCHEZ MARTINEZ**
**Juez de Apelaciones**

### ESCOLIO VOTO PARTICULAR Y DE CONFORMIDAD DEL JUEZ DE APELACIONES SR. SANCHEZ MARTINEZ — 96 DTA 67

**1.** ___ D.P.R. ___ (1996), **96 J.T.S. 12.**