Sánchez Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La controversia que plantea este caso es la siguiente: Los beneficiarios, los herederos y el padre y la madre de un empleado de una agencia del Gobierno que, estando trabajando en destaque ante otra agencia del Gobierno, murió como resultado de un accidente del trabajo, ¿tienen alguna causa de acción por dicha muerte contra el patrono asegurado, Estado Libre Asociado de Puerto Rico, por la invocada negligencia de los supervisores que tenía el empleado fallecido en la otra agencia en la que estaba destacado? La respuesta es que, en las circunstancias particulares de este caso, el Estado no es un tercero ajeno a la relación laboral del obrero fallecido sino patrono estatutario asegurado que, como tal, posee inmunidad contra este tipo de reclamación.
*829 Los hechos que se alegan en la demanda son sencillos. William Díaz Pagán era Oficial de Custodia de la Administración de Corrección y fue seleccionado por su agencia para integrar un grupo de trabajo conjunto entre la Administración de Corrección y el Negociado de Investigaciones Especiales (NIE). Se trataba de una operación encubierta para detectar actos de corrupción dentro de las: instituciones penales del país (ayuda a fugas, tráfico de drogas y armas, etc.).
El 12 de noviembre de 1994, en horas de la madrugada, William y su esposa decidieron ir a recoger a la cuñada de William que se encontraba en una actividad social en el Centro de Convenciones de San Juan. Mientras ellos transitaban poruña carretera en. un vehículo oficial que se la había asignado a William para llevar a cabo su trabajo, ambos fueron atacados a tiros desde un vehículo que los interceptó. William murió como resultado de los dos balazos que recibió, pero su esposa sobrevivió al ataque.
Inicialmente, el 2 de mayo de 1995 el Fondo del Seguro del Estado le negó cubierta a los beneficiarios de William (su viuda y un hijo menor de edad) por entender que al momento de ser atacado a tiros, el empleado se encontraba en una gestión puramente personal, no relacionada con su trabajo. Sus beneficiarios apelaron a la Comisión Industrial.
El 20 de septiembre de 1995 la viuda, el hijo y los progenitores del empleado fallecido le notificaron al Secretario de Justicia su intención de demandar al Estado. Un mes después, 24 de octubre de 1995, éstos presentaron una demanda de la cual desistieron sin perjuicio el 1ro. de mayo de 1996. No obstante, el 21 del mismo mes presentaron otra demanda por los mismos hechos ante la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico. Como es natural, la demanda no incluyó como demandado al Estado Libre Asociado de Puerto Rico. El 30 de noviembre de 1996, laN corte federal desestimó con perjuicio la acción basada en la ley federal de derechos civiles, 42 U.S.C. see. 1983, y sin perjuicio las acciones fundadas en derecho estatal.
Algún tiempo después, el 11 de febrero de 1997, la Comisión Industrial determinó que existía prueba suficiente en el récord para concluir razonablemente que el móvil del crimen no era un asalto común sino que el evento estaba relacionado con el trabajo del empleado fallecido. Por tal razón, devolvió el caso al Fondo para la correspondiente reinvestigación.
Coetáneamente, el 14 de febrero de 1997, la viuda Linnette Eileen Colón Miranda, el referido hijo menor, así como el padre y la madre del occiso, instaron la acción judicial de autos para reclamar resarcimiento por los daños y perjuicios sufridos por ellos debido a la muerte de William. Acumularon como demandados al Secretario de Justicia Pedro R. Pierluisi Urrutia, a la Secretaria de Corrección y ■ Rehabilitación Nydia Cotto Vives, al Administrador de Corrección Joseph Colón, a la directora del NIE Lydia Morales Santiago, a los agentes especiales del NIE Jorge Gorritz Oquendo y Jorge Aponte y al Estado Libre Asociado de Puerto Rico.
La demanda está predicada en la negligencia de los supervisores y demás funcionarios del Estado "por falta de responsabilidad y por el descuido en su deber de supervisión a quien fuera su agente William Díaz Pagán por exponerlo a tan grave riesgo personal de envolverlo en investigaciones contra el crimen organizado sin tener prácticas administrativas o ‘policies ’ administrativos para la selección, reclutamiento, entrenamiento y seguimiento de personal para trabajo encubierto en tareas de alto riesgo a la seguridad personal. William Díaz Pagán fue transferido al NIE sin el adiestramiento necesario para actuar en situaciones peligrosas. Adiestramientos y capacitación que serían de mucha ayuda que de haberlo tenido el resultado hubiese sido distinto." Demanda, párr. 15 (Apéndice, a la pág. 43).
En la demanda también se aduce que la Administración de Corrección y el NIE entraron en convenios de trabajo conjunto "sin tomar en consideración y concientizar al empleado transferido del riesgo a que se exponía tanto en el momento de su reclutamiento como después de haber llevado a cabo la labor encubierta; el no tener mecanismos especiales, normas y procedimientos establecidos para darle seguimiento a este tipo de empleado cuyas funciones son de alto riesgo personal bis a bis [sic] al trabajo ordinario que realizaría si no se expone al riesgo del trabajo especial." Demanda, párr. 17 (Apéndice, a la pág. 44). Se alega también que si los demandados "hubieran tomado las providencias necesarias y apropiadas por parte de los supervisores se hubiera minimizado y hasta en *830 cierta medida evitado los trágicos sucesos antes señalados con el consabido daño aquí expuesto." Demanda, párr. 18 (Apéndice, a la pág. 45). Los demandantes reclaman una indemnización total de $3,940,000.
El 26 de mayo de 1997, el Estado presentó una moción de desestimación a base de que, primero, la notificación de la intención de demandar que la Ley de Pleitos contra el Estado requiere que se haga en plazo de noventa días, fue hecha a los once meses y, segundo, que la acción está prescrita. La parte demandante se opuso. El 5 de diciembre de 1997, el tribunal recurrido dictó una resolución que tituló sentencia mediante la cual accedió a desestimar la demanda únicamente en cuanto al Estado Libre Asociado de Puerto Rico por no haberse hecho la notificación de la intención de demandar al Estado dentro del plazo estatuido de noventa días. La parte demandante presentó, en tiempo hábil, tanto una moción de reconsideración como una moción de determinaciones de hechos adicionales.
El 17 de diciembre de 1997 el agente co-demandado Jorge Gorritz Oquendo presentó una moción de desestimación a base de que el emplazamiento había sido diligenciado fuera del plazo legal de seis meses y que, además, la acción en su contra estaba prescrita. No aparece en los autos del caso oposición alguna a esta moción de desestimación.
Estando pendientes de resolverse estas mociones, el 5 de febrero de 1998 el Fondo concluyó que el asesinato de William ocurrió como consecuencia de su trabajo y le otorgó la íntegra protección de la ley a su viuda y su menor hijo, únicos beneficiarios de aquél, quienes, como hemos dicho, figuran además como demandantes en esta acción.
Finalmente, el 9 de mayo de 1998 el tribunal recurrido dictó una nueva resolución en la que dejó sin efecto su resolución ("sentencia'') anterior y resolvió que en las circunstancias particulares del presente caso, el Estado estuvo enterado e investigando los hechos que dieron lugar a la demanda desde el mismo día en que éstos ocurrieron por lo que era superfluo el requisito legal de notificación al Estado. Además, resolvió que la acción no estaba prescrita. En cuanto a la moción del agente Gorritz resolvió que no procedía desestimar la demanda porque la demora había sido de "escasamente once días", desestimar iría contra su "sentido de justicia" y porque tal demora no era peijudicial. De esta resolución es que acuden en un mismo recurso de certiorari ante nosotros tanto el Estado como el agente Gorritz.
En su recurso los peticionarios hacen dos apuntamientos de error: (1) que erró el tribunal al obviar el requisito de notificación al Estado de la intención de demandar en el plazo de noventa días y (2) al negarse a tener por desistida la demanda contra el agente Gorritz por haberse diligenciado su emplazamiento fuera del plazo legal de seis meses. Al evaluar el recurso nos percatamos, por los hechos alegados en la petición y en la demanda incluida en el apéndice, de la probable inexistencia de una causa de acción contra el Estado. Por ese motivo dirigimos a la parte demandante una orden para que mostrara causa por la cual no deberíamos decretar la desestimación de la demanda contra el Estado por tratarse de un accidente del trabajo y ser el Estado un patrono asegurado. Dicha parte compareció pero su posición no nos persuade.
No está en controversia que William Díaz Pagán era un empleado de la Administración de Corrección, una agencia del Gobierno, en destaque de trabajo en el NIE, otra dependencia del Gobierno, ninguna de las cuales funciona como una corporación pública distinta y separada de la otra, Rodríguez Torres v. Aut. Edif. Púbs., 141 D.P.R. (36) (1996), 96 J.T.S. 108, y, mucho menos, como si fueran patronos privados diferentes. Véase, Op. Sec. Just. Núm. 22 de 1986. Distinto a las corporaciones públicas, ninguna de estas dos dependencias gubernamentales genera sus propios fondos operacionales. Para cubrir sus gastos de funcionamiento, ambas reciben una asignación presupuestaria del fondo general del Estado Libre Asociado de Puerto Rico del cual se pagan las primas a la Corporación del Fondo del Seguro del Estado. Por lo tanto, el Estado es el patrono sobre el cual recae la responsabilidad del pago de las primas. Tampoco está en controversia que el Estado tenía sus primas al día. Mucho menos está en controversia que la muerte del causante William Díaz Pagán fue el resultado de un accidente del trabajo.
El derecho aplicable a este tipo de controversia ya no presenta la incertidumbre de antaño. La figura de la inmunidad patronal tiene su base en la exclusividad de remedio provista en el Art. 20 de la Ley *831 del Sistema de Compensación por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1938, según enmendada, 11 L.P.R.A. secs. 21. De este emana el principio jurídico de que todo patrono que cumpla con la obligación de asegurar a sus empleados con la Corporación del Fondo del Seguro del Estado, tendrá "inmunidad" respecto a cualquier accidénte que sufran dichos empleados en el curso de su empleo, pudiendo éstos reclamar únicamente los beneficios que provee el Fondo. Admor. F.S.E. v. Flores Hnos. Cement Prods., 107 D.P.R. 789, 792 (1978). Sencillamente, el obrero lesionado (y quienes de éste deriven beneficios o sean sus herederos) carece de una causa de acción contra su patrono. Id.
La doctrina de la inmunidad del Estado Libre Asociado de Puerto Rico frente al tipo de reclamación que hace ahora la parte demandante, fue sentada en F.S.E. v. E.L.A., 111 D.P.R. 402 (1981). En éste, una empleada de la Policía de Puerto Rico que sufrió daños como resultado de un accidente del trabajo, una caída en una escuela administrada por el entonces Departamento de Instrucción Pública, pretendía, junto al Fondo en acción subrogatoria, recobrar los daños y perjuicios sufridos en el accidente. El Tribunal Supremo rechazó este tipo de reclamación a base de la inmunidad del Estado como patrono asegurado de la empleada lesionada. En específico señaló:
"[N]o creemos que el lenguaje utilizado por la Ley de Compensaciones, a los fines de determinar los empleados que están cubiertos, en el sentido de que las agencias e instrumentalidades del Estado "se consideran patronos individuales e independientes", constituye suficiente fuente estatutaria para destruir el manto de inmunidad patronal del Estado. La fuente de dinero para el pago de la prima es una sola: el tesoro público. Tanto constitucional como estatutariamente, el Departamento de Instrucción Pública y la Policía --aunque distintos para fines administrativos en el descargo de sus responsabilidades— sus empleados y funcionarios tienen un mismo patrono: el Estado Libre Asociado. No podemos concluir que es un extraño ajeno a ambos. El deber primordial del Estado es proveer servicios esenciales a la ciudadanía. En las agencias mencionadas, seguridad y educación.
Estas gestiones, si bien se implementan separadamente, en substancia y en última instancia representan el ejercicio de una obligación común y una sola capacidad, la gubernamental." Id., a las págs. 407-08.
Como podrá observarse, no cabe hacer distinción válida alguna entre los hechos de F.S.E. v. E.L.A. y los del caso de autos. William Díaz Pagán era un empleado del Estado Libre Asociado de Puerto Rico al momento de sufrir el accidente del trabajo que le produjo la muerte. Por ende, sus familiares carecen de una causa de acción que puedan ejercer en los tribunales contra el Estado. Como la revisión judicial de los dictámenes recurridos se da contra éstos y no contra sus fundamentos, procede la expedición del auto, la revocación de la resolución recurrida y la desestimación de la demanda en cuanto al Estado Libre Asociado de Puerto Rico.
El segundo señalamiento de error, se refiere a que el tribunal recurrido se negó a dictar sentencia parcial teniendo a la parte demandante por desistida con perjuicio en cuanto a su reclamación contra el co-demandado Jorge Gorritz Oquendo. No hay controversia en cuanto a que el emplazamiento dirigido al co-demandado Gorritz fue expedido el 14 de febrero de 1997 y que el mismo fue diligenciado mediante entrega personal el 25 de agosto de 1997, es decir, a los seis meses y doce días (192 días calendario) de haberse expedido el emplazamiento.
En el caso de autos el tribunal a quo denegó la moción de desestimación del co-demandado Gorritz sin que sepamos las razones que tuvo la parte demandante para no haber diligenciado el referido emplazamiento dentro del amplio término de seis meses que otorga la Regla 4.3 (b) de Procedimiento Civil para ello. No consta de los apéndices de los escritos de las partes que los demandantes hubiesen justificado de algún modo la dilación de doce días en diligenciar el emplazamiento. Más aún, no consta que se hubiesen opuesto a la desestimación.
El tribunal a quo meramente basó su negativa a desestimar en que la dilación fue de "escasamente once días" [sic] y su sentido de justicia no le permitía decretar el desistimiento con perjuicio. Además, añadió que la parte demandada no demostró que hubiese sido perjudicada por tal demora. Nótese que ambos razonamientos son defectuosos.
*832 En primer lugar, el término específico que tiene un demandante para diligenciar un emplazamiento está provisto por ley y no puede quedar al arbitrio individual del juez conformado únicamente por su "sentido de justicia". Si así fuera, tendríamos tantos términos para diligenciar el emplazamiento como jueces hubiera en el país. El término para diligenciar el emplazamiento es seis meses "de haber sido expedido", Regla 4.3 (b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.3 (b); no seis meses y un día ni seis meses y once (o doce) días. Y aunque no se trata de un término jurisdiccional, sí es un término de cumplimiento estricto. Banco Metropolitano v. Berrios, 110 D.P.R. 721 (1981). La premisa inarticulada en que descansa esta norma es que de ordinario el período de seis meses es razonablemente suficiente para que el promovente de una acción civil pueda diligenciar los emplazamientos expedidos. Ortalaza v. F.S.E., 116 D.P.R. 700, 702-703 (1985); Monell Cardona v. Aponte, 145 D.P.R. _ (1998), 98 J.T.S. 94.
Mas este término de seis meses es prorrogable por justa causa por un período adicional razonable. Se ha considerado justa causa el que no haya podido localizarse al demandado para emplazarlo, Banco Metropolitano v. Berrios, supra, o que tratándose de un demandado desconocido, no haya podido descubrirse aún su verdadero nombre debido a la dilación de los demandados en responder al descubrimiento de prueba, Núñez González v. Jiménez Miranda, 122 D.P.R. 134 (1988). Pero no se ha considerado justa causa el que no haya podido emplazarse al demandado porque éste se le hubiere escondido al emplazador. First Bank of P.R. v. Inmobiliaria Nacional, Inc., 145 D.P.R. _ (1998), 98 J.T.S. 18. Tampoco es justa causa la mera alegación de que el demandante "tiene sumo interés en continuar con los procedimientos", Lugo v. Municipio de Bayamón, 111 D.P.R. 679 (1981), o que el demandante estaba "realizando cierto descubrimiento de prueba sobre el conocimiento personal de los hechos [por parte del alcalde co-demandado] y que los emplazamientos fueron diligenciados por conducto de la División Legal del Municipio [co-demandado]", Monell Cardona v. Aponte, supra, o que el emplazamiento no se expidió porque el demandante no sometió el proyecto de emplazamiento a la secretaria para ser expedido. Id.
En segundo lugar, conviene recordar que es al demandante a quien incumbe el peso de probar la justa causa para la demora y no al demandado demostrar que ha sufrido perjuicio por la dilación. Ante la ausencia de justificación válida que explique satisfactoriamente la imposibilidad de haber diligenciado el emplazamiento del co-demandado Gorritz dentro del amplio término de seis meses provisto en la Regla 4.3 (b), la discreción judicial está necesariamente limitada por lo taxativo del término. Cometió manifiesto error el tribunal recurrido al no dictar sentencia parcial teniendo por desistida con perjuicio la acción contra el co-demandado Jorge Gorritz Oquendo.
Con estos antecedentes, se expide el auto y se revoca la resolución recurrida. Se ordena al Tribunal de Primera Instancia, Sala Superior de Bayamón, que proceda a dictar sentencia sumaria parcial desestimando la demanda en cuanto a los co-demandados Estado Libre Asociado de Puerto Rico y Jorge Gorritz Oquendo, haciendo la correspondiente certificación de finalidad conforme a lo dispuesto en la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General